## UNITED STATES v. BENGOCHEA et al.

(Circuit Court of Appeals, Fifth Circuit. March 28, 1922.)

### No. 3815.

**i. Customs duties ⬤62—Intoxicating liquor is "merchandise," within statute relating to production of manifests.**

Intoxicating liquor is "merchandise," within Rev. St. § 2811 (Comp. St. § 5508), requiring master of a vessel to produce manifests in writing to inspector of customs, in view of section 2766 (Comp. St. § 5462).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Merchandise.]

**2. Customs duties ⬤2—Statute requiring master to deliver manifest more than league from shore valid.**

Rev. St. § 2811 (Comp. St. § 5508), requiring masters of laden vessels bound for a port of the United States to produce manifests in writing on demand when within four leagues of the coast, is valid, as is section 2814 (Comp. St. § 5511), penalizing master failing to produce manifests.

**3. Customs duties ⬤62, 129—Vessel intending to deliver cargo at sea held "bound to a port of the United States," within statute relating to manifests.**

A vessel, getting or intending to get its cargo into the United States by delivering it at sea more than three miles from shore to a boat or boats, by which it was to be carried to a port of the United States, was "bound to a port of the United States," within the meaning of Rev. St. §§ 2811, 2814 (Comp. St. §§ 5508, 5511), requiring a master to deliver a manifest to customs officers and providing a penalty for failing to do so.

Appeal from the District Court of the United States for the Southern District of Florida; Rhydon M. Call, Judge.

Libel by the United States against Angela Bengochea and others, claimants of the schooner Reemplazo. From a decree dismissing the libel, the United States appeals. Reversed, with directions.

William M. Gober, U. S. Atty., of Lakeland, Fla., and Damon Yerkes and Maynard Ramsey, Asst. U. S. Atty., both of Jacksonville, Fla.

Edwin R. Dickenson, of Tampa, Fla., for appellees.

Before WALKER, BRYAN, and KING, Circuit Judges.

WALKER, Circuit Judge. This was a libel by the United States against the schooner Reemplazo, her boats, tackle, etc. The original libel contained the following:

"That C. C. Light, inspector of customs of the district of Florida, being then and there, on the 15th day of May, 1920, duly authorized by law to make such seizures, seized said schooner Reemplazo, her boats, tackle, apparel and furniture near North Anclote Key and within four leagues of the coast of the United States, said schooner, her boats, tackle, apparel, and furniture, being the property of some person or persons to the said United States attorneys

unknown, and brought her to Tampa, Florida, in the said Southern district of Florida, where she now is as forfeited to the United States for the following, among other, causes:

"That the said schooner, being then and there laden with merchandise and bound for the port of Tarpon Springs, or some other port within the jurisdiction of this court, arrived and cast anchor within four leagues of the coast of the United States; that said schooner laden with cargo as aforesaid, and being bound for the said port of Tarpon Springs, or some other port within the jurisdiction of this court, and having then and there arrived within four leagues of the coast of the United States, it then and there became and was the duty of the master of said schooner, upon demand by an officer of the customs, to produce the manifests in writing which such master is required to have on board such vessel; that C. C. Light, inspector of customs of the state of Florida, on the said 15th day of May, 1920, made demand upon the master of said schooner to produce said manifests; that said master, upon being demanded as aforesaid to produce the manifests in writing required by law, then and there failed to produce such manifests to the said C. C. Light, inspector of customs of the state of Florida, for inspection, and did then and there fail to deliver to the said officer true copies of any such manifest, in violation of section 2811 of the Revised Statutes of the United States and other acts of Congress in such cases made and provided."

The libel was amended by adding the following averment:

"That by reason of the premises aforesaid and the provisions of section 2814 of the Revised Statutes of the United States the master of said vessel became and is liable to a penalty of not more than $500 payable to libelant, and that under the provisions of section 3088 of the Revised Statutes said vessel shall be held for the payment of such penalties and may be seized and proceeded against summarily to recover the same."

On the submission of the case on the pleadings and the evidence adduced, the court found as follows:

"On May 15, 1920, the schooner, a Cuban fishing smack, was boarded by the deputy collector of customs, while at anchor some six or seven miles north of Long Key, and demand for the manifest was made. During the time the master was searching for it, it was discovered by the officers that the vessel had intoxicating liquors and some Chinamen on board—the liquors constituting her only cargo.

"After this discovery, little or no attention was paid to the question of the manifest. The next day, after the seizure of the schooner, a clearance certificate from the authorities in Havana was produced, showing that the schooner cleared for a fishing trip on May 8, 1920. After the vessel left the harbor of Havana, the liquors and Chinamen were put on board, and she sailed, intending to deliver the liquors and Chinamen to a boat or boats at sea, to be transported in said boat or boats to Tarpon Springs, or in that vicinity. To accomplish this delivery the vessel was anchored at the point where she was boarded and seized, awaiting the appearance of the parties for whom the liquors and Chinamen were intended."

The ground on which the libel was dismissed is disclosed by the following statement in the opinion rendered:

"The importation of liquors being prohibited for any purpose by the War-Time Prohibition Act, the vessel was not loaded with merchandise as defined by section 2766, R. S. [Comp. St. § 5462], and section 2811 [Comp. St. § 5508] is not applicable."

That opinion contained the following:

"It is strenuously contended by the claimants that, the seizure being made more than a marine league from the shore, there could be no cause of action based on this statute. The validity of the four-league limit has not, to my knowledge, been directly passed on by the courts, but in many cases it seems to

be recognized as valid and binding upon all ships laden with merchandise bound to a port in the United States. In this case, however, it is not necessary to decide the question. The testimony in the case shows that the only cargo upon said vessel was intoxicating liquors."

[1] That the libel was dismissed on an untenable ground is shown by the recent ruling of this court in two cases similar to this one, except as to a feature hereinafter mentioned—United States v. Santini, claimant, etc., and United States v. Lowe, claimant, etc., 279 Fed. 534, U. S. Circuit Court of Appeals, Fifth Circuit, present term.

[2] In behalf of the appellees it is contended that the action of the court in dismissing the libel is sustainable on the ground, disclosed by the evidence and the court's finding, that the demand for the manifest and the seizure were made more than a marine league from the shore. Section 2806, R. S. (Comp. St. § 5503), provides that:

"No merchandise shall be brought into the United States, from any foreign port, in any vessel unless the master has on board manifests in writing of the cargo, signed by such master."

What the manifest must contain is prescribed by section 2807, R. S., as amended by the Act of June 3, 1892, 27 Stat. 41 (Comp. St. § 5504). Section 2811, R. S. (Comp. St. § 5508), provides that:

"Every master of any vessel laden with merchandise, and bound to any port of the United States, shall, on his arrival within four leagues of the coast thereof, * * * upon demand, produce the manifests in writing which such master is required to have on board his vessel, to such officer of the customs as first comes on board his vessel, for inspection," etc.

### Section 2814, R. S. (Comp. St. § 5511), provides as follows:

"If the master of any vessel laden with merchandise, and bound to any port in the United States, fails upon his arrival within four leagues of the coast thereof, * * * to produce such manifests as are heretofore required, in writing, to the proper officer upon demand therefor, * * * according to the directions of the preceding sections, * * * the master shall for every such neglect, refusal, or offense, be liable to a penalty of not more than five hundred dollars."

For that penalty against the master section 3088, R. S. (Comp. St. § 5792) gives a lien on the vessel. The above-quoted provision of section 2811 of the Revised Statutes has been in existence since 1799. So far as we are advised, there has been no decision against its validity. It evidences the exercise of a governmental power, the existence of which has been recognized by controlling authority. The case of Church v. Hubbart, 2 Cranch, 187, 2 L. Ed. 249, involved questions as to the seizure of an American vessel by Portuguese officials while the vessel was four or five leagues from the shore of a South American Portuguese possession, for the purpose of carrying on an illicit trade with inhabitants of that possession. With reference to that seizure the following was said in the opinion of the court, which was delivered by Chief Justice Marshall:

"The authority of a nation within its own territory is absolute and exclusive. The seizure of a vessel within the range of its cannon by a foreign force is an invasion of that territory, and is a hostile act which it is its duty to repel. But its power to secure itself from injury may certainly be exercised beyond the limits of its territory. Upon this principle the right of a belligerent to search a neutral vessel on the high seas for contraband of war, is uni-

versally, admitted, because the belligerent has a right to prevent the injury done to himself by the assistance intended for his enemy; so, too, a nation has a right to prohibit any commerce with its colonies. Any attempt to violate the laws made to protect this right, is an injury to itself which it may prevent, and it has a right to use the means necessary for its prevention. These means do not appear to be limited within any certain marked boundaries, which remain the same at all times and in all situations. If they are such as unnecessarily to vex and harass foreign lawful commerce, foreign nations will resist their exercise. If they are such as are reasonable and necessary to secure their laws from violation, they will be submitted to. In different seas, and on different coasts, a wider or more contracted range, in which to exercise the vigilance of the government, will be assented to. Thus in the Channel, where a very great part of the commerce to and from all the north of Europe, passes through a very narrow sea, the seizure of vessels on suspicion of attempting an illicit trade must necessarily be restricted to very narrow limits; but on the coast of South America, seldom frequented by vessels, but for the purpose of illicit trade, the vigilance of the government may be extended somewhat further; and foreign nations submit to such regulations as are reasonable in themselves, and are really necessary to secure that monopoly of colonial commerce, which is claimed by all nations holding distant possessions. If this right be extended too far, the exercise of it will be resisted. It has occasioned long and frequent contests, which have sometimes ended in open war. The English, it will be well recollected, complained of the right claimed by Spain to search their vessels on the high seas, which was carried so far that the guarda costas of that nation seized vessels not in the neighborhood of their coasts. This practice was the subject of long and fruitless negotiations, and at length of open war. The right of the Spaniards was supposed to be exercised unreasonably and vexatiously, but it never was contended that it could only be exercised within the range of the cannon from their batteries. Indeed the right given to our own revenue cutters to visit vessels four leagues from our coast is a declaration that, in the opinion of the American government, no such principle as that contended for, has a real existence. Nothing, then, is to be drawn from the laws or usages of nations, which gives to this part of the contract before the court, the very limited construction which the plaintiff insists on, or which proves that the seizure of the Aurora, by the Portuguese governor, was an act of lawless violence."

In the case of Hudson v. Guestier, 6 Cranch, 281, 3 L. Ed. 224, one of the grounds of the decision was the recognized validity of a seizure of a vessel by French officials, for a breach of a municipal regulation, while the vessel was more than two leagues from the coast of an island belonging to France. In the opinion in the case of The Apollon, 9 Wheat. 362, 371, 6 L. Ed. 111, the above-quoted provision of section 2811, R. S., was referred to as conferring a right of visitation exercisable, within four leagues of our coasts, over our own vessels, and over foreign vessels bound to our ports. That section was referred to in the opinion of this court in the case of The Javirena, 67 Fed. 152, 14 C. C. A. 350. The Javirena, a Spanish fishing smack from Havana, was seized while it was in the open waters off the coast of Florida, about five or six miles from the mainland, and was sought to be charged with liability for the penalty prescribed by section 2773, R. S. (Comp. St. § 5469), for departing from the collection district without making a report or entry. The decision that the smack did not incur that penalty was based, not on the ground that the seizure was invalid because it was made more than three miles from shore, but on the ground that the evidence showed that the vessel was not bound to, and did not enter, any port of the United States, and for that rea-

son was not liable to the penalty for departing from the collection district without making a report or entry.

In view of the great length of time the above-quoted provision of section 2811 has been in existence and acted on, without complaint, so far as appears, by foreign nations whose vessels are affected by the exercise of the right which the provision asserts, and of the long-continued recognition by the courts of the validity of the provision, for reasons disclosed, though not in cases calling for a decision on the question, we are of opinion that there is an absence of justification for the contention that the United States went beyond any power or jurisdiction with which it is vested in authorizing, for the protection of its revenue and the enforcement of its commercial regulations, such action as the statute in question provides for within four leagues of our coast. To sustain that contention would mean that a foreign vessel hovering near our coast, for the purpose of violating, or aiding in the violation of, our laws, would be, so long as it keeps more than three miles from shore, beyond the reach of reasonable and appropriate action by the government for the protection of its rights, not involving any needless or harassing interference with legitimate commerce. The conclusion is that the seizure in question is not subject to be declared invalid on the ground that it was made more than three miles from the Florida coast.

[3] The court did not make a finding on the question of a compliance or noncompliance with the demand for the production of manifests. There was evidence to support findings that the demand was not complied with, and that the master did not have such a manifest as the statute requires. Under the evidence adduced the vessel is to be regarded as having been bound to a port of the United States, and as bringing merchandise into the United States from a foreign port, within the meaning of the statute, though it did not itself enter or intend to enter such port, but was getting or intending to get its cargo into the United States by delivering it at sea, more than three miles from shore, to a boat or boats by which it was to be carried to Tarpon Springs or the vicinity of that port. The libel does not specifically allege a failure to have the required manifest on board, or claim the penalty for such failure. R. S. § 2809 (Comp. St. § 5506). It is subject to amendment in that regard.

For reasons above indicated, the dismissal of the libel was erroneous. Because of that error the decree is reversed, with direction that the libelant have leave to amend the libel.

Reversed.