### UNITED STATES v. 1,250 CASES OF LIQUOR.

### THE HENRY L. MARSHALL.

(District Court, S. D. New York. October 14, 1922.)

1. Customs duties ⬤⟳125—Statute held violated by transferring liquor outside three-mile limit to small boats, by which it was brought within the country.

Transfer of liquor outside the three-mile limit from vessel in which it was brought from the Bahamas to small boats, by which it was illegally introduced into the United States, *held* a violation of Tariff Act 1913, § III, H (Comp. St. § 5526), making it an offense to enter or introduce, or attempt to enter or introduce, into the commerce of the United States any imported merchandise by false or fraudulent practices or devices.

2. Customs duties ⬤⟳125—Transfer to small boats at night without permission held unlawful, though transfer was made outside the three-mile limit.

The transfer of liquor at night from a vessel in which it was brought from a foreign port to small boats, without the permission required by Rev. St. § 2872 (Comp. St. § 5563), for unloading at night, was an unlawful

---

⬤⟳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

unloading within that section, though the transfer was made outside the three-mile limit, as the act of unloading continued until the liquor was landed.

3. **Customs duties ⬸125—Deprivation of duties not essential element of offense of introducing merchandise by false or fraudulent practice.**

Under Tariff Act 1913, § III, H (Comp. St. § 5526), providing that, if any person shall enter or introduce, or attempt to enter or introduce, into the commerce of the United States any imported merchandise by means of any false or fraudulent practice, or shall commit any willful act of omission by which the United States may be deprived of lawful duties on such merchandise, the merchandise or its value shall be forfeited, the deprivation of lawful duties is not an essential element of the offense of entering or introducing the merchandise by false or fraudulent practices.

4. **Customs duties ⬸125—"Merchandise," as respects introduction by fraudulent practice, to be given liberal construction.**

Notwithstanding Rev. St. § 2766 (Comp. St. § 5462), defining "merchandise" as that which is capable of being imported, Tariff Act 1913, § III, H (Comp. St. § 5526), relative to the introduction of merchandise into the commerce of the United States by false or fraudulent practices, should be given its ordinary meaning and liberally construed, to prevent the bringing of intoxicating liquor into the United States secretly and by conniving instrumentalities, or by a concert of action, especially as Act Feb. 24, 1919, § 600 (Comp. St. Ann. Supp. 1919, §§ 5986e–5986i), permits the importation of liquor for industrial uses.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Merchandise.]

5. **Customs duties ⬸130—Unmanifested liquor not subjected to forfeiture as property of master or crew, when ownership not clearly established.**

Liquor brought within the United States, or within four leagues of the coast, was not subject to forfeiture under Rev. St. §§ 2806–2809 (Comp. St. §§ 5503–5506), providing that, if merchandise brought into the United States from any foreign port shall not be included in the manifest, the master shall be liable to a penalty equal to its value, and all such merchandise, not included in the manifest and belonging to the master, mate, officers, or crew, shall be forfeited, where the ownership of the liquor is not clearly established, but the evidence negatives ownership by the master, mate, or crew.

6. **Customs duties ⬸129, 130—Master subject to penalty, and unloaded liquor subject to forfeiture, for unloading without permission outside the three-mile limit.**

Under Rev. St. § 2867 (Comp. St. § 5555), prohibiting the unloading of merchandise before a vessel has come to the proper place for discharge of cargo and has been duly authorized by the customs officer, where the master of a vessel knowingly participated in deliveries of liquor outside the three-mile limit to evade the customs laws, and intended to attempt to introduce liquor still unloaded by similar means, the liquor remaining aboard was subject to forfeiture, and the master was subject to the penalty imposed by section 2867.

7. **Admiralty ⬸23—Vessel introducing liquor by hovering off the coast subject to court's jurisdiction.**

A vessel introducing liquor into the commerce of the United States by hovering off the coast and unloading into smaller craft within four leagues of land subjected herself to the jurisdiction of a United States court and may be proceeded against for forfeiture.

8. **Customs duties ⬸130—Foreign vessel, unloading liquor within four leagues of shore, not permitted to deny she was bound for the United States.**

A vessel coming within four leagues of the shore and unlawfully unloading intoxicating liquor into small boats, without inspection or per-

⬸For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

mission of the customs authorities, and without producing manifests in writing, as required by Rev. St. §§ 2814, 2867 (Comp. St. §§ 5511, 5555), and whose master assisted and participated in the unloading for the purpose of evading the statutes, though registered as a foreign vessel, could not be permitted to deny in a proceeding for forfeiture that she was bound for the United States, so as to render such statutes inapplicable.

9. **Customs duties** ⟳129—**Master refusing to produce manifest subject only to penalty of not more than $500.**

Rev. St. §§ 2808, 2809 (Comp. St. §§ 5505, 5506), relative to the forfeiture of merchandise not included in a vessel's manifest and belonging or consigned to the master or crew, is limited to omission of merchandise from existing manifest, and a master of a vessel unloading liquor outside the three-mile limit was subject only to a penalty of not more than $500 where he refused to produce any manifest and probably had none.

Libel by the United States against 1,250 Cases of Liquor, and two libels by the United States against the schooner Henry L. Marshall. Decree for the government.

William Hayward, U. S. Atty., of New York City (John Holley Clark, Jr., and Francis A. McGurk, Asst. U. S. Atty., both of New York City, of counsel), for the United States.

Robert H. Elder and Charles H. Hyde, both of New York City, for claimant.

HAZEL, District Judge. The above libels in rem, three in number, filed by the United States, are to recover penalties, and for forfeiture of the sailing vessel Henry L. Marshall and her cargo of 1,250 cases of intoxicating liquor, which was taken aboard for transportation at the British Indies and brought to the United States in violation of section III, H, of the Tariff Act of 1913 (Comp. St. § 5526), and sections 2806–2809, R. S. (Comp. St. §§ 5503–5506). The libels, by consent of the parties, were tried together, and, as the evidence is applicable to all of them, a single opinion will suffice.

The libel against the cases of intoxicating liquors will be considered first. It alleges the seizure of the sailing vessel and transference of liquors without the consent of the collector of the port, into motorboats about 9 miles east of Atlantic City; that the liquors seized were brought into the Southern district of New York, where they remain; that when the vessel departed from West End Grand Bahamas to this country, immediately preceding her seizure, she had two sets of clearance papers, one stating that the vessel left for Gloucester, Mass., in ballast, the other that she was bound for Halifax, N. S., with 1,500 cases of liquor; that she had no manifest listing liquors on board, as required by sections 2806–2809, and 2814, R. S. (Comp. Ct. §§ 5503–5506, 5511).

The libels against the vessel allege her seizure by the collector of customs on August 12, 1921, after seizure by the master of the revenue cutter Seneca outside the three-mile limit, and that at such time the vessel was within the jurisdiction of the United States and of this court. In separate counts it is alleged that at various times prior to her seizure the schooner unloaded and transferred liquors into small

boats secretly at night, without special license from the collector of the port, for conveyance to the shore at Savannah, Far Rockaway, Montauk Point, and Atlantic City, liquors that had been brought by her from the British West Indies, their value exceeding $400, and on account thereof subjected her to forfeiture and seizure under sections 2872–2874, R. S. (Comp. St. §§ 5563–5565). It is also separately alleged that the vessel, bound for the United States, on various occasions unloaded its merchandise, to wit, intoxicating liquors, within four leagues of the coast of the United States for the purpose of evading the customs laws, and not due to unavoidable necessity, which subjected her master to a penalty of $1,000 under section 2867, R. S. (Comp. St. § 5555), and the vessel to seizure under section 3088, R. S. (Comp. St. § 5792). It is also alleged that, when the vessel was boarded by officers off the coast of Atlantic City, her captain failed to produce a manifest and became liable under sections 2814 and 3088. A further cause of forfeiture is that unmanifested merchandise, to wit, intoxicating liquor, worth $60,000, was brought into the United States on July 31, 1921, from the British West Indies by said vessel, in violations of sections 2809 and 3088, R. S., while still other allegations are that the vessel arrived from a foreign port within the subport of Greenport and port of New York between April 1, 1921, and July 1st of the same year, without her master making personal report of the arrival within 24 hours, and failure to make written report of the arrival within 48 hours as required by sections 2774, 2775 and 3088, R. S. (Comp. St. §§ 5470, 5471, 5792).

Paragraph H of section III of the Tariff Act of 1913 in terms makes it an offense for any person or persons to enter or introduce, or attempt to enter or introduce, into the commerce of the United States, any imported merchandise by means of any false statement or of any false or fraudulent practices or devices. Claimant's contention on this point is that the liability of the vessel and cargo must be strictly limited to merchandise to which the false or fraudulent practice directly applies, and hence the liquors illegally introduced by the small boats alone were subject to seizure under the National Prohibition Act (41 Stat. 305), while the 1,250 cases left on board the vessel were not subject to seizure in waters outside the three-mile limit from shore. Although the evidence relating to secretly unloading contraband at Savannah and other points prior to the seizure on August 1, 1921, off the coast of Atlantic City does not warrant seizure of the liquor for past offenses, yet it bears upon the prior transgressions of the master for which the vessel became liable.

[1] The contention that the cargo or any portion thereof was not actually brought into the United States, that it did not consist of merchandise as that word is defined in the act, is not in my opinion maintainable, in view of the evidence showing a deliberate intention to violate the customs and revenue acts. According to the evidence, one Schliefer agreed at Miami, Fla., prior to the shipment of the cases of liquor in question, to purchase of one Crossland the entire cargo of liquor to be brought from West End Bahamas, delivery to be outside the three-mile limit at Atlantic City, as directed by one McCoy, who

was the registered owner of the vessel prior to such shipment, and who directed the movements of the vessel from shore, and on land co-operated with Crossland (who had chartered the vessel, as McCoy stated in his letter to the master) in the sale and delivery of liquors. Two clearances were obtained at Grand Bahamas, the port of loading, as heretofore stated—one for Gloucester in ballast; the other stating that the vessel was bound for Halifax, N. S., with 1,500 cases of liquor. The evidence not only shows that instructions as to the movements of the vessel were given the master by McCoy, but the inference is that he in fact represented the registered owner after his transfer of the vessel to him on her departure for the United States on her trip preceding her seizure. The statute under consideration is not limited merely to the vessel entering or attempting to enter merchandise into the commerce of the United States since the words "enter or introduce" in my opinion broaden the earlier act.

[2] The evidence shows conclusively that the master intended to introduce and did introduce the liquors into the United States by the participation of small boats which came to the vessel for transference. Such practices by concerted action were fraudulent and a violation of the statute in question. The transfers and deliveries of the liquor at night without the permission of the officials specified in section 2872 was an unlawful unloading. Even though the act of unloading began beyond the the three-mile limit, it continued until the liquor was landed. Such was the holding of Judge Morton in The Grace and Ruby (D. C.) 283 Fed. 475, recently decided, and I am in accord with his conclusions. The vessel here, as in The Grace and Ruby, actively assisted in the unloading, and by the use of motorboats or other craft caused the fraudulent introduction of the merchandise into the commerce of the United States.

[3, 4] The qualifying words of paragraph H, § III, relating to deprivation of lawful duties, are not believed to be an essential element of the offense, since it comprehensively and in broad terms declares it to be an offense to "enter or introduce" merchandise into the commerce of the United States by any false or fraudulent practice. U. S. v. Cutajar (C. C.) 60 Fed. 744; U. S. v. Rosenthal (C. C.) 126 Fed. 776. Nor should the word "merchandise," in view of the evidence, be given the narrow and restricted meaning contended. By section 2766, R. S. (Comp. St. § 5462), it is declared, it is true, that merchandise is that capable of being imported, and in U. S. v. Sischo (C. C. A.) 270 Fed. 958, and U. S. v. Hana (C. C. A.) 276 Fed. 817, this provision was construed to mean merchandise legally capable of being imported, and it was held that failure to manifest such merchandise did not subject the liquors to seizure and forfeiture under section 2809. In those cases the libel was under title 34, R. S., relating to collection of duties, while under paragraph H, § III, the word "merchandise," in view of the evident intention of Congress to make it an offense to bring in any merchandise by fraudulent practices, is not believed to be thus limited. It should, I think, be given its ordinary meaning, and, as said in U. S. v. Santini (C. C. A.) 279 Fed. 534, a liberal construction.

In that case, decided by the Circuit Court of Appeals for the Fifth

Circuit, the libel was under sections 2867–2872 and 2814, R. S. (Comp. St. § 5555 et seq. and section 5511). The learned court held that it was not only merchandise entitled to entry that were required to be listed on the manifest, but also prohibited goods, since, if the law were otherwise, it would be impossible to prevent evasions of the revenue and prohibitive importations. The court expressed the opinion that an enlargement of the word "merchandise" was intended by the enactment of section 2776, R. S. (Comp. St. § 5472). So in this case the words of the statute, "any imported merchandise entered or introduced," or attempt to do so by means of any fraudulent practice or appliance whatsoever, are entitled to a construction that will operate to prevent bringing into the United States intoxicating liquor secretly and by conniving instrumentalities or by concert of action.

Nor, in my view, was the seizure of the liquors invalid because there was no deprivation of the revenue shown. The National Prohibition Act, it is true, prohibits the importation of intoxicating liquor except for nonbeverage purposes, but liquors are still legally importable for industrial uses (section 600, Act Feb. 24, 1919 [Comp. St. Ann. Supp. 1919, §§ 5986e–5986i]), and subject to taxation. U. S. v. Yuginovich, 256 U. S. 450, 41 Sup. Ct. 551, 65 L. Ed. 1043. In this circuit the Sischo Case has been followed, and I am told that failure to produce manifests carrying liquors and unloading outside the three-mile limit has not therefore been deemed a violation of section 2809. But those decisions were rendered before the Santini Case, supra, U. S. v. Bengochea (C. C. A.) 279 Fed. 537, and the Grace and Ruby. The Circuit Court of Appeals for this circuit, in U. S. v. Reed, 280 Fed. 721, substantially stated that, as the Supreme Court had granted a writ of certiorari in the Sischo Case, 43 Sup. Ct. 88, 93, 67 L. Ed. ——, ——, its term of court would be extended to enable subsequent application for rehearing by the United States if the Supreme Court reversed that decision. This court is unadvised as to the facts upon which those decisions were rendered, no opinion having been written, and I venture therefore to presume that the evidence before me distinguishes them.

[5, 6] The government, however, contends that this proceeding against the cases of liquor is nevertheless maintainable under sections 2806–2809, providing that unmanifested merchandise brought into the United States or within four leagues of the coast is deemed to belong to the master, mate, or crew and subject to forfeiture. The evidence, however, negatives any such ownership or consignment. The ownership of the liquor is not clearly established, though Crossland appears to have sold some of it while aboard the vessel to Schliefer, a druggist. There can therefore be no forfeiture under section 2809, but in my opinion paragraph H applies, and section 2867 also. The liquor was brought to the United States, since the act of the master in making willful delivery of portions of the cargo outside the three-mile limit was related to its introduction into the commerce of the United States. He knowingly participated in the deliveries to evade the customs laws, and moreover the facts and circumstances sufficiently warrant the inference that he intended to attempt to introduce the remaining quantity

by similar means. For these reasons, the liquor remaining aboard was subject to forfeiture, and the master became liable under section 2867.

[7, 8] Coming, now, more particularly to the important questions urged at the bar relating to the vessel in question: In view of the activities of the master and schooner in introducing liquor into the commerce of the United States by hovering on the coast and unloading into smaller craft within four leagues of the land, she subjected herself to the jurisdiction of this court and may be proceeded against for forfeiture. Church v. Hubbart, 2 Cranch, 187, 2 L. Ed. 249; The Grace and Ruby. The evidence shows that on the first trip the vessel came near to Savannah with her liquor aboard. She hovered inside of an estuary all night within sight of land, when there was no necessity by stress of weather or otherwise for so doing, and her cargo was unloaded into small boats and transported to the shore. One McCoy, an American, who then was the registered owner, was aboard. The unladen cargo undoubtedly was destined to the United States, with the intention on the master's part to discharge it near Savannah for deliverance to purchasers, without actually coming to the land or ordinary place of discharge. At Montauk Point she again unloaded her cargo of liquor loaded aboard at the Bahamas, within twelve miles of the coast, and, laying at anchor, remained in touch with the shore, meanwhile receiving instructions with respect to the discharge of the liquor. Again, on another occasion, off Far Rockaway, her cargo of liquor was transferred at sea into small boats about eight or nine miles from shore. At Montauk Point she came within the three-mile limit in Fort Pond Bay lying there at anchor about 3 days where supplies were taken to her from the shore. Reference has been made above to her last trip off the Atlantic City coast, the manner in which she was there unloaded, and her seizure. In all the various unloadings the master assisted, and participated in the unloading which constituted a deliverance into the United States for the purpose of evading the statute. Sections 2867 and 2814 prohibited such manner of unloading, and the master was required to produce manifests in writing to the proper officials before doing so. U. S. v. Bengochea (C. C. A.) 279 Fed. 537. In all the recited instances the vessel came within four leagues of the shore, and unloaded unlawfully and without inspection or permission of the constituted authorities, and even though registered as a foreign vessel she cannot be permitted to deny that she was bound for the United States, and thus render the statutes bearing upon the misconduct of her master innocuous, when he obviously committed frauds upon the revenue.

[9] The government contends that under section 2809 the master incurred a liability in an amount equal to the value of the liquor not manifested. The evidence, however, as heretofore stated, does not satisfactorily show that the merchandise belonged or was consigned to the master, mate, officers, or crew, and therefore the particular penalty prescribed is not thought to apply. Sections 2808, 2809, describing the offense, seem to me, when read together, to limit the omission of merchandise from an existing manifest. The evidence shows that the master refused to produce a manifest on request of the boarding officer,

and it is quite believable that he had none, and his failure in this particular subjected him to a penalty of not more than $500 for which a lien is given against the vessel.

The eighth cause of forfeiture in the amended libel is therefore not sustained. All other violations alleged in the libels are established by the proofs, and accordingly both vessel and cases of liquor seized are forfeited to the United States.

A decree may be entered, with costs.