**UNITED STATES v. 63 KEGS OF MALT, etc.**

Circuit Court of Appeals, Second Circuit.
July 2, 1928.

No. 115.

Customs duties ⬅129—Vessel carrying liquor held "bound for United States," within law imposing penalty (Tariff Act of 1922, §§ 581–584 [19 USCA §§ 481 note, 484–486]).

Vessel carrying liquor, destined for United States by discharge into contact boats, *held* bound for United States within Tariff Act of 1922, §§ 581–584 (19 USCA §§ 481 note, 484–486), imposing a penalty for failure to exhibit manifest on demand; policy of law requiring cargo to be manifested being not merely to aid in collection of duties, but also to inform government what goods are to be brought into the United States.

Manton, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Southern District of New York.

Libel by United States against 63 kegs of malt, etc., ex British auxiliary schooner Rosie M. B. Decree of dismissal, and libelant appeals. Reversed.

Libel was filed to forfeit the unmanifested cargo of the schooner Rosie M. B. under the provisions of sections 581–584 of the Tariff Act of 1922 (42 Stat. 979, 980 [19 USCA §§ 481 note, 484–486]). From a decree dismissing the libel and directing a return of the cargo to the claimant, the libelant appealed. Reversed.

Charles H. Tuttle, U. S. Atty., of New York City (Herman T. Stichman and Thomas E. Kerwin, Asst. U. S. Attys., both of New York City, of counsel), for the United States.

Louis Halle, of New York City, for appellee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

SWAN, Circuit Judge. This appeal was argued with the two cases involving the Mistinguette and her cargo, in which an opinion has this day been filed. 27 F.(2d) 738. The principles involved are the same, but as the facts vary somewhat a separate opinion seems desirable.

At 7:40 a. m. on June 22, 1926, the Rosie M. B. was sighted by the commander of the Coast Guard vessel McDougal, which was then 11 or 12 miles southeast of Montauk Point. When first observed, the schooner was headed north magnetic in toward Long Island Sound. When the McDougal neared her, she changed her course suddenly to the southwestward. After two shots had been fired across her bow, she stopped and was boarded. The point of seizure was about 11 miles off shore. The master stated to the boarding officer that he was on his way to Nassau and did not know he was within the 12-mile limit, and he ascribed his error to the fact that a cigarette case in his binnacle had probably thrown his compass off; but, as he also stated that he had discovered the cigarette case before he reached Nantucket Light Vessel, the explanation is, to say the least, unconvincing. When his manifest was demanded, the master said he had none. The cargo consisted of 63 kegs and 5 tanks of Scotch malt and 20 empty kegs and 7 empty tanks. Her clearance certificate showed the schooner to be on a voyage from Shelburne, Nova Scotia, to Halifax, with a cargo of 83 kegs of malt. The master intervened as claimant and averred that he was in possession of the cargo as bailee thereof. He introduced no evidence, but moved for dismissal when the libelant rested.

On these facts the court found that there was sufficient evidence to bring the vessel

within section 584 (19 USCA § 486), but that there was no proof that the cargo was consigned to the master, other officer, or member of the crew.

The latter conclusion we think erroneous, for the reasons stated in the companion opinion relating to the cargo of the Mistinguette. It may be noted that the contents of 20 of the kegs had been disposed of since the vessel's departure from Shelburne, which tends to support the inference that the master had full power of disposition.

The only question which requires further discussion is whether there was probable cause for thinking the vessel was "bound to the United States." The facts differ from those in The Mistinguette, in that the Rosie M. B. was never within territorial waters. In the former case it was a fair inference that the vessel intended to discharge her cargo on shore, or at least within the 3-mile limit; here it is as probable that she intended to lie outside that limit and discharge into contact boats as that she intended to go within it. We cannot avoid deciding, therefore, whether it is enough to make a vessel one bound to the United States that she carries cargo destined for the United States which she intends to discharge into contact boats within 4 leagues of the coast, without herself entering territorial waters. The policy of the statutes which require cargo to be manifested is not merely to aid in the collection of duties, but also to inform the government what goods are to be brought into the United States. United States v. Sischo, 262 U. S. 165, 167, 43 S. Ct. 511, 67 L. Ed. 925.

It is within the reasonable meaning of the phrase to refer to a vessel carrying cargo destined for our shores by discharge into contact boats which do not themselves issue manifests, and within the area where the vessel must exhibit a manifest on demand, as one "bound to" the United States. See United States v. Bengochea, 279 F. 537 (C. C. A. 5); The Henry L. Marshall (D. C.) 286 F. 260, 266, affirmed 292 F. 486 (C. C. A. 2). Such a construction will carry out the policy of the statutes, and will not interfere with a transshipment at sea of cargo destined for foreign ports, The Coquitlam, 77 F. 744 (C. C. A. 9), or with a bona fide transshipment into a vessel which will herself issue a manifest of cargo destined for our shores.

The decree of dismissal is reversed, with costs.

MANTON, Circuit Judge, dissents.