## THE MISTINGUETTE.

### UNITED STATES v. 416 CASES G. T. WHISKY, etc.

Circuit Court of Appeals, Second Circuit.
July 2, 1928.

Nos. 104–112.

1. **Customs duties ⬅129—Master's failure to produce manifest within four leagues of coast subjects him to penalty (Tariff Act 1922, §§ 431, 435, 581 [19 USCA §§ 241, 245, 481, note]).**

Under Tariff Act 1922, § 581 (19 USCA § 481, note), failure of master of vessel to produce manifest on demand by customs official anywhere within four leagues of coast subjects him to penalty, notwithstanding sections 431 and 435 thereof (19 USCA §§ 241, 245).

2. **Customs duties ⬅129—Master of liquor-laden vessel without manifest held liable to penalty equal to value of cargo, in addition to $500 penalty (Tariff Act 1922, §§ 581, 584, 594 [19 USCA §§ 481, note, 486, 498]).**

Master of liquor-laden vessel, failing to produce manifest as required by Tariff Act 1922, §§ 581, 584, 594 (19 USCA §§ 481, note, 486, 498), held liable, in addition to penalty for $500, for a penalty equal to value of cargo.

3. **Customs duties ⬅129—Penalty for failure to produce manifest need not be first imposed on master before proceeding against vessel (Tariff Act 1922, §§ 581, 584, 594 [19 USCA §§ 481, note, 486, 498]).**

Penalty for failure of master of vessel to exhibit manifest within 12-mile limit, as required by Tariff Act 1922, §§ 581, 584, 594 (19 USCA §§ 481, note, 486, 498), need not first be imposed on master before vessel can be proceeded against.

4. **Customs duties ⬅129—Goods delivered to master without bill of lading held consigned to master, within law imposing penalty for failure to produce manifest (Tariff Act 1922, §§ 581, 584, 594, 615 [19 USCA §§ 481, note, 486, 498, 525]).**

Goods delivered to master without bill of lading or invoice *held* consigned to master, within Tariff Act 1922, §§ 581, 584, 594 (19 USCA §§ 481, note, 486, 498), imposing penalty for failure to exhibit manifest, particularly in view of section 615 (19 USCA § 525), placing burden of proof in such case upon claimant.

Manton, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Southern District of New York.

Separate libels by the United States against the auxiliary schooner Mistinguette, her engines, etc., and against 416 cases G. T. whisky, etc., ex French schooner Mistinguette. Decree for libelant in the first case, and dismissing the libel in the second case, and claimant and libelant separately appeal. Affirmed as to the first case, and reversed as to the second.

See, also, 14 F.(2d) 753.

In the first case, the libel asserts a lien upon the vessel for penalties incurred by her master for failure to exhibit her manifest on demand of an officer of the Coast Guard within the 12-mile limit, as prescribed by sections 581, 584, and 594 of the Tariff Act of 1922 (42 Stat. 979, 980, 982 [19 USCA §§ 481, note, 486, 498]). From a decree imposing a penalty of $15,660 and directing a sale of the vessel to satisfy it, the claimant has appealed. Affirmed.

In the second case, for the master's same failure, the libel seeks forfeiture of the cargo. From a decree dismissing the libel and releasing the cargo, the United States has appealed. Reversed.

Charles H. Tuttle, U. S. Atty., of New York City (Thomas E. Kerwin and Herman T. Stichman, Asst. U. S. Attys., both of New York City, of counsel), for the United States.

Louis Halle, of New York City (Nathan April, of New York City, of counsel), for claimant.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

SWAN, Circuit Judge. These two appeals were argued together and a single opinion will suffice to dispose of both. The evidence is that the auxiliary schooner Mistinguette was discovered by the watch officer of the Coast Guard vessel Porter at 1 o'clock a. m. on March 2, 1926. She was

---

then less than 3 miles from shore and was headed toward Montauk Point. She was running without lights, and when detected by the Porter she turned about, headed out to sea, and put on her lights. When overhauled and boarded, the testimony was that she was 4½ miles off shore. The libelant's bill of particulars specified the place of seizure as 7½ miles off shore, and the appellee contends the government is limited to this location. It is immaterial which distance is taken. She carried nothing but a cargo of liquor. She had no manifest. Her clearance papers showed her a vessel of French registry, bound from St. Pierre, Miquelon, to Nassau. The agreed value of her cargo was $15,160, and this sum, plus the $500 penalty also imposed under section 584 (19 USCA § 486), makes up the total penalty decreed against her. Section 584 provides that the " * * * master of any vessel * . * * bound to the United States who does not produce the manifest to the officer demanding the same shall be liable to a penalty of $500, and if any merchandise, * * * is found on board * * * which is not included or described in said manifest * * * the master of such vessel * * * shall be liable to a penalty equal to the value of the merchandise so found * * * and any such merchandise belonging or consigned to the master or other officer or to any of the crew of such vessel, * * * shall be subject to forfeiture. * * * "

To incur these penalties the vessel must be "bound to the United States." The claimant concedes that this is a question of fact and not concluded by her clearance papers, but argues that there is no evidence to sustain the District Court's finding that she was so bound. Little authority has been called to our attention to aid in the interpretation of this phrase. In The Coquitlam (C. C. A. 9) 77 F. 744, at page 751, it was said that the vessel must be one "bound to the United States, for the purposes of her voyage," and that her casual arrival and the transferring to another vessel of cargo not destined for the United States is not forbidden.

In United States v. Bengochea, 279 F. 537 (C. C. A. 5), the schooner was seized some 6 miles off shore. She carried intoxicating liquors, which the court found were intended to be delivered to a boat or boats at sea to be transported to the coast. The libel charged a failure to produce a manifest, in violation of section 2811, R. S. (Comp. St. § 5508). The court said (page 541):

"Under the evidence adduced the vessel is to be regarded as having been bound to a port of the United States, and as bringing merchandise into the United States from a foreign port, within the meaning of the statute, though it did not itself enter or intend to enter such port, but was getting or intending to get its cargo into the United States by delivering it at sea, more than three miles from shore, to a boat or boats by which it was to be carried to Tarpon Springs or the vicinity of that port."

In The Pictonian (C. C. A.) 20 F.(2d) 353, the vessel was lying 14 miles off shore with a cargo of liquor, and we said there was no proof she was bound for a port of the United States and no authority to require the production of her manifest at that distance from shore. Neither this nor any of the other cases cited by appellant throw light upon the problem. It is clear, we think, that the phrase does not require that she reach a port of entry. For a vessel to come into territorial waters is enough "to bring into" the United States contraband cargo under our decision in The J. Duffy, 18 F.(2d) 754. The phrase "bound to" can require no more. The Mistinguette was within the 3-mile limit when first observed. She was far off her ostensible course to Nassau, carrying contraband merchandise, proceeding at night without lights, headed toward shore, and upon detection she turned about and made off. It is a reasonable inference that she intended to unlade her cargo upon our coast, or to transfer it to smaller boats near shore. If this was the purpose of her voyage she was "bound to the United States." United States v. Bengochea, supra. But we do not need to hold more than that there was probable cause for the institution of the libel charging violation of the customs laws, for in that event the claimant has the burden of proving innocence under section 615 of the Tariff Act of 1922 (42 Stat. 987 [19 USCA § 525]). This section we applied in The Squanto, 13 F.(2d) 548, and The J. Duffy, supra. Such burden the claimant has not satisfied, having introduced no evidence except the ship's papers.

[1] It is argued that, even if the schooner was bound to the United States, there is no requirement that she produce a manifest outside the 3-mile limit because of the wording of sections 431 and 435 of the Tariff Act of 1922 (42 Stat. 950, 951 [19 USCA §§ 241, 245]). Such a construction would deny effect to section 581 (19 USCA § 481 note), which authorizes officers of the cus-

toms or of the Coast Guard to board a vessel within 4 leagues of the coast and to examine the manifest and search the vessel. Sections 2806–2814 of the Revised Statutes (Comp. St. §§ 5503–5511), which are the precursors of the sections now under discussion, made it expressly clear that the master was subject to penalty, if he failed to produce the manifest upon demand by a customs official anywhere within four leagues of the coast. The validity of this requirement was sustained in United States v. Bengochea, supra. We agree with the District Court that no intent to reduce the area of enforcement is evidenced by the Tariff Act of 1922. The Mistinguette (D. C.) 14 F.(2d) 753. Accord: The Vinces, 20 F.(2d) 164, 177 (D. C. S. C.).

[2] It is next objected that in any event the master was liable only to a penalty of $500 and not to an additional penalty equal to the value of the cargo. The Squanto (C. C. A.) 13 F.(2d) 548, and The Henry L. Marshall (D. C.) 286 F. 260, affirmed (C. C. A.) 292 F. 486, are cited in support of this contention. In neither case was the point presented to us on the record or mentioned in the opinion. The appellant's interpretation would lead to the strange result that a master would incur a heavier penalty if he manifested part of his cargo than if he manifested none of it. We prefer the construction adopted by the lower court, which is supported also by The Pesaquid, 11 F.(2d) 308 (D. C. R. I.) and The Vinces, supra.

[3] Finally, we are pressed with the contention that the penalty must first be imposed upon the master before the vessel can be proceeded against. Seijo v. United States, 20 F.(2d) 904 (C. C. A. 1). Much as we respect the opinion of the judges of the First Circuit, we are constrained to differ with this interpretation of the statute. Section 594 says that, whenever the master "has become subject to a penalty for violation of the customs revenue laws," the vessel "shall be held for the payment of such penalty and may be seized and proceeded against summarily by libel to recover the same." This is quite different from saying that the libel will lie only after the penalty has been judicially imposed upon the master. In The Squanto, supra, we allowed the vessel to be held for penalties without reference to the question of proceeding against her master. While this cannot be deemed a determination of the point, it was in fact involved. This has been the uniform practice in this circuit so far as we know. It was sanctioned under former statutes in the following cases: The Helve-

tia, Fed. Cas. No. 6,345; United States v. The Missouri, Fed. Cas. No. 15,785; United States v. The Queen, Fed. Cas. No. 16,108; The Paolina S. (C. C.) 11 F. 171, 174, The C. G. White, 64 F. 579, 581 (C. C. A. 9). It was followed under the present statute in The Pesaquid, supra, and The Vinces, supra. See, also, The Scow 6–S, 250 U. S. 269, 272, 39 S. Ct. 452, 63 L. Ed. 977. We hold that it is unnecessary to proceed first against the master or owner.

[4] Under section 584 it is declared that unmanifested merchandise "belonging or consigned to the master or other officer or to any of the crew * * * shall be subject to forfeiture." The court dismissed the cargo libel for lack of proof that it was so consigned, citing The Coquitlam, supra. In that case, however, there was no allegation in the libel that the merchandise was consigned to any of the persons specified in the statute, and the answer of the cargo claimants averred that it was not so consigned. The court, therefore, refused to consider the count seeking forfeiture of the cargo. In the instant case the necessary allegation appears in the libel, and the claim of the master, who intervened as claimant, avers that he was in possession of the cargo as lawful bailee thereof.

In United States v. 10,000 Cigars, Fed. Cas. No. 16,450, Justice Curtis held that goods delivered to the master without bill of lading or invoice, and intended to be smuggled to one Davis at the port of destination, must be deemed to be consigned to the master within the meaning of the statute. He said:

"All that is required is, that the master should in fact be the consignee. By what means he is made so is not material. * * * The latter [master] had the entire possession and control of the property, on its arrival, and he alone can be deemed the consignee. * * * He had the possession and control therefore, not merely as master, for their transportation and the collection of freight, but for their entry here, or their delivery to Davis unlawfully, as he should elect."

The case is referred to with approval in United States v. Hutchinson, 26 Fed. Cas. pages 446, 451. We think it correctly states the law applicable to the present situation. If the master has authority from the owner to dispose of the goods as he pleases upon their arrival at destination, if he may peddle them to customers in contact boats, his is the final power of disposition and the goods are necessarily consigned to him. The

shipper must consign his goods to some one; some one must have authority to dispose of them upon arrival. In the case of contraband goods brought close to our shores under circumstances, such as appear in the case of the schooner Mistinguette, it is a fair inference that the master can do with them as he pleases. So far as there can be doubt that this was the situation, section 615 fills the gap by putting the burden of proof upon the claimant. Certainly enough was shown by the libelant to constitute probable cause for instituting suit.

The constitutionality of section 615 is attacked by the claimant on the theory that it operates to permit confiscation of property without due process of law. The statute appears, in substance, as section 909 of the Revised Statutes (Comp. St. § 1532) and finds its origin in an Act of March 2, 1799. It has been applied innumerable times without question of its validity. See Locke v. United States, 7 Cranch, 339; 3 L. Ed. 364; The Thompson, 3 Wall. 155, 162, 18 L. Ed. 55; Feathers of Wild Birds v. United States, 267 F. 964 (C. C. A. 2); The Squanto, supra. We see no ground to doubt its constitutionality.

The decree as to the vessel is affirmed, and the decree as to cargo reversed.

MANTON, Circuit Judge, dissents.