## THE NEWTON BAY.

District Court E. D. New York.  November 16, 1928.

William A. De Groot, U. S. Atty., of Brooklyn, N. Y. (Alex Pisciotta, Asst. U. S. Atty., of Brooklyn, N. Y., of counsel), for the United States.

Louis Halle, of New York City, for claimant.

INCH, District Judge. The libelant seeks a decree pursuant to section 584 of the Tariff Law 1922 (19 USCA, § 486), against the steamship Newton Bay, as well as against her cargo. The owner of the steamship appeared in the suit and claimed her. An alleged owner appeared for the cargo. The case was tried and the following facts were established:

On the 2d of December, 1927, a member of the crew of the United States Coast Guard cutter Gresham observed the British steamship Newton Bay, lying at anchor, about 8½ miles off the Long Island shore. The Newton Bay is a ship of British registry, of the trawler type, about 170 feet long, 30 feet beam, drawing 15 feet, and about 636 gross tons. She is apparently owned by a Canadian Company and had come from Halifax, Nova Scotia. When the Gresham first observed her, she was lying off Fire Island, pointing towards the shore, and, according to the captain's chart of the Newton Bay, his course had been, previous to that time, north by west, or directly for the Long Island shore.

The Newton Bay was loaded with about 400 cases and bags of gin, brandy, and whisky. This was her sole cargo, with the exception of some decayed fish. In other words, it is plain she was nothing but a rum runner.

 As would be expected, there was no manifest. There is no doubt in my mind but that the facts and the reasonable inferences therefrom indicate she was bound to a port in the United States, to wit, that of New York, or points adjacent thereto. The Mistinguette (C. C. A.) 27 F.(2d) 738.

When those on board of the Newton Bay observed the approach of the Gresham, they attempted to escape, and the chase continued until the boats were about 13 miles off the coast, at which time, after the Gresham had fired two shots, the Newton Bay stopped, and an officer of the Gresham went on

board and demanded inspection of her manifest.

If the right to seize the Newton Bay, because of an absence of a manifest, under the circumstances, existed, this right was not lost because she had succeeded in getting further than 12 miles from shore in her continuous attempt to escape before she was overtaken. Gillam v. U. S. (C. C. A.) 27 F. (2d) 296. No explanation for the Newton Bay lying at anchor near our shores or displaying anchor lights appears in the record.

There was no manifest produced by her captain, nor was there any to be produced. The Newton Bay was duly seized. U. S. v. 63 Kegs (C. C. A.) 27 F.(2d) 741. These facts, as found by me, as to the Newton Bay, distinguish this case from the facts in The Pictonian (C. C. A.) 20 F.(2d) 353.

On the trial the proctor for claimant contented himself with cross-examination. No attempt was made on the trial to prove who the owner was of the cargo, or to whom it had been consigned. To be sure, a man in Canada had sworn in a pleading that it was his liquor; but whether it was his or not, as consignee or otherwise, was not shown on the trial. There were some cases of liquor already missing from the original shipment when the ship was seized, and every fair inference points to the sole control and custody of the master of the Newton Bay over this cargo. In other words, as was said recently in the case of U. S. v. 416 Cases of Whisky (C. C. A.) 27 F.(2d) 738: "In the case of contraband goods brought close to our shores, under circumstances such as appear in the case of the schooner Mistinguette, it is a fair inference that the master can do with them as he pleases. So far as there can be doubt that this was the situation, section 615 fills the gap by putting the burden of proof upon the claimant."

To be sure, the libel here is not as specific as might be desired in this respect, but no question was made of this on the trial, nor was there any attempt made on the trial to rebut the plain inference arising, on the facts proved, in this regard. The subsequent conduct of the Newton Bay, as well as the other circumstances, indicated her presence to be for no good purpose, and I feel that common sense requires the conclusion, from the record of the trial, that the Newton Bay was a rum runner without a manifest, bound for a port in the United States, with a cargo of contraband goods, over which the captain had complete power of disposal. The fact that she was apprehended within the 12-mile limit, and fled beyond it because her captain knew he had no manifest and had contraband goods on board, with which he intended to violate our law, should make no difference. In my opinion both the ship and the cargo should be forfeited by reason of violation of section 584 of the Tariff Act of 1922 (19 USCA § 486).

I cannot believe, from the facts here, that the Newton Bay had but casually arrived when she was discovered, or that her purpose might be innocent in any way, or that there are inferences present rebutting the apparent power of disposal over the cargo on the part of the master, or that this vessel may have been innocently on her way past the United States. The Coquitlam (C. A.) 77 F. 744. The facts as shown by the record in the Coquitlam Case are entirely different from the facts of this record. See 77 F. 746, 747. They differ, also, from the facts in the case of U. S. v. The Schooner George & Earl (D. C.) 30 F.(2d) 441, decided this day.

Decree for libelant in accordance with this opinion.