## THE MOUNT CLINTON.

(Circuit Court of Appeals, Second Circuit. February 9, 1925.)

No. 189.

**Shipping ⬅️16—Liability of vessel for penalty for importing opium not manifested.**

Act Jan. 17, 1914, § 8 (Comp. St. § 8801f), providing that, whenever opium or any of its derivatives shall be found on any arriving vessel and not shown on its manifest, such vessel shall be liable for a penalty and forfeiture, *held* subject to the provision of Act Feb. 8, 1881 (Comp. St. § 5766), that no vessel used as a common carrier shall be subjected to seizure or forfeiture for violation of the customs laws unless the owner or master was a consenting party or privy thereto.

Appeal from the District Court of the United States for the Southern District of New York.

Libel of information in admiralty by the United States against the steamship Mount Clinton. Decree for respondent, and the United States appeals. Affirmed.

William Hayward, U. S. Atty., of New York City (Francis A. McGurk, Asst. U. S. Atty., of New York City, of counsel), for the United States.

Rumsey & Morgan, of New York City (Mark W. Maclay and John Tilney Carpenter, both of New York City, of counsel), for appellee.

Before ROGERS, MANTON, and HAND, Circuit Judges.

HAND, Circuit Judge. The suit arose on a libel of information against the steamship Mount Clinton for failure to manifest certain opium surreptitiously imported into the United States. It was tried on stipulation (since it raised only questions of law), by which it was agreed that the master and officers of the Mount Clinton, a common carrier, before sailing from Hamburg had exercised due diligence to prevent opium and other contraband from being imported in the vessel; that they had established a special watch at the gangway, had instituted supplementary guards and watchmen, had given instructions to open every package other than the regular cargo, and to turn over all opium and other contraband to the proper authority; that while at sea, en route to New York, the master had instructed the officers to search for such articles, and that such search had been made. Nevertheless opium and cocaine to the value of $1,400 had been concealed in the back of the storeroom ice box, between the rear wall and the iron bulkhead of the vessel, access to which could be gained only through a door leading from the storeroom ice box. This opium and cocaine was, of course, not manifested.

The case raises the effect of section 8 of the Act of January 17, 1914 (38 Stat. 277 [Comp. St. § 8801f]), which enacts that, whenever opium or cocaine is found upon a vessel arriving in any port of the United States which has not been manifested as provided in sections 2806 and 2807 of the Revised Statutes (Comp. St. §§ 5503, 5504), the vessel shall be liable for the penalty and forfeiture prescribed in section 2809 (Comp. St. § 5506). That section imposes no penalty upon the vessel, but does impose one on the master equal to the value of the merchandise not manifested, and it further forfeits all such merchandise belonging to the master or the crew. Furthermore, section 3088

of the Revised Statutes (Comp. St. § 5792) provides generally that, whenever the master of a vessel is subject to a penalty for violation of the revenue laws, the vessel shall be holden for its payment and may be seized therefor. There would be no escape from a decree against the vessel, were it not for the Act of February 8, 1881 (21 Stat. 322 [Comp. St. § 5766]). This provided that no vessel used as a common carrier should be subject to seizure or forfeiture "by force of the provisions of title 34 of the Revised Statutes of the United States," unless the owner or master were privy to the illegal act. The question is whether this section, which confessedly affected an amendment to section 3088 of the Revised Statutes, also excuses a vessel otherwise guilty under section 8 of the Opium Act.

The libelant insists that section 8 of the Opium Act only incorporated Revised Statutes, § 2809, by reference to indicate what the penalty should be. With this we certainly cannot agree; it seems clear that the act meant to make the earlier statutes apply ex proprio vigore. That does not, however, answer the libelant's case, since the act of 1881 does not verbally comprise Revised Statutes, § 2809. Even so, we think it open to argument, though upon it we express no opinion, that the act of 1881, which excused the ship when the master was innocent, likewise excused the master. It is at least plausible to suppose that, when Congress meant to absolve the ship (if a common carrier), it meant also to absolve her master, especially when she continued liable for his guilt if he were guilty. But, regardless of that point, it hardly seems to us likely that, in subjecting the ship to a penalty for failure to manifest opium, Congress intended to put her in another category from ships generally who are guilty of a dereliction with which the carriage of opium is expressly classed. We concede that, taken literally, section 8 of the Opium Act subjects the ship to all penalties to which the master is subject under Revised Statutes, § 2809, and that therefore, unless the master may take advantage of the act of 1881, the appellee here is in the same case. Nevertheless we think it prima facie improbable that Congress intended to do more than extend to opium the provisions generally applicable to unmanifested merchandise.

The strongest argument for the libelant is that, if this construction is correct, the existing provisions of the Revised Statutes were sufficient to cover the case without section 8 of the Opium Act, and that Congress

must have thought opium so baleful as to require more stringent penalties than those in the case of other unmanifested merchandise. That, of course, may have been the purpose; but, if so, section 8 was a curious way to accomplish the result. Congress need only have said that the act of 1881 did not apply to opium, if it had already supposed that the provisions relating to the entry of merchandise covered opium as well. It seems improbable that section 8 should therefore have been cast in the form which it was, if all it meant to do was to take away the excuse of the statute of 1881 from opium carriers.

We think that the section more probably finds its origin in the doubt which might well have been raised as to the application of chapter 4 of title 34 of the Revised Statutes to opium at all. Revised Statutes, § 2766, defined the word "merchandise," as used in that title, as follows: "The word 'merchandise,' as used in this title, may include goods, wares, and chattels of every description capable of being imported." Comp. St. § 5462. Section 1 of the Act of January 17, 1914 (Comp. St. § 8800), enacted that it should be unlawful thereafter to import opium, except for medicinal purposes. Therefore it might well be argued that opium not imported for such purposes was not "capable of being imported," within Revised Statutes, § 2766, and, if so, that sections 2806, 2807, and 2809 did not apply to it, because the word "merchandise" in these is defined by section 2766.

If it be once granted that this was the purpose of section 8 of the Opium Act, we should certainly not be disposed to press severely the language used. While it is true that Congress might, in addition, have wished to take away the excuse of the act of 1881, it seems to us more likely that its purpose was fully executed by bringing opium within the general class of merchandise. If so, there seems to be no occasion to introduce whimsical distinctions, born of grammatical niceties. Besides, the presumption must always be against the imposition of penalties upon those who are innocent and have used all reasonable precautions to prevent the evil against which the statute is directed. When Congress has by a positive change of purpose excused a class of innocent persons, we should have to be well satisfied that in a similar case it later intended to withdraw the excuse.

For these reasons we agree with the learned District Judge, and the judgment is affirmed.