## THE OWEGO.

(Circuit Court of Appeals, Second Circuit. February 2, 1921.)

No. 94.

**Shipping ☞104—Vessel not liable on contract of charterer.**

 A steamship, under a time charter, which was not a demise, and whose master, as required by the charter party, on request of the charterer, signed bills of lading for a shipment received at a stated rate of freight *held* bound only by the contract expressed in such bills, and not liable to the shipper for the difference between the rate named therein and the rate previously agreed upon between the shipper and charterer.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty by Herman & Herman, Incorporated, against the steamship Owego; the Owego Steamship Corporation, claimant. Decree for libelant, and claimant appeals. Reversed.

Duncan & Mount, of New York City (R. T. Mount, of New York City, of counsel), for appellant.

Loomis, Barrett & Jones, of New York City (H. L. Loomis, of New York City, of counsel), for appellee.

Before WARD, HOUGH and MANTON, Circuit Judges.

WARD, Circuit Judge. The parties have submitted a very incomplete record, and the District Judge has entered a decree for the libelant, without giving any reasons whatever for his conclusion. We must do the best we can with such a situation.

October 4, 1916, the owners of the steamer Owego chartered her to the Federal Forwarding Company for the term of one year from date of delivery, which was January 28, 1917. The charter was not a de-

mise, and obviously intended that the master should sign bills of lading; article 9 providing:

"9. * * * And the charterers hereby agree to indemnify the owners from all consequences or liabilities that may arise from the captain signing bills of lading or otherwise complying with the same."

And it was further provided:

"All bills of lading given for cargo shipped under this charter party the charterers undertake and agree shall contain the following clause: 'The ship in addition to any liberties expressed or implied herein shall have the liberty to comply with any orders or directions as to departure, arrival, routes, ports of call, stoppages or otherwise howsoever given by his majesty's government, or any department thereof, or any person acting or purporting to act with the authority of his majesty or his majesty's government or of any department thereof, or by any committee or person having under the terms of the war risks insurance on the ship the right to give such orders or directions, and nothing done or not done by reason of such orders or directions shall be deemed a deviation.' Should charterers fail to insert said clause, master shall have the right to refuse to sign such bills of lading."

November 2, 1916, the libelants made a freight engagement with the Federal Forwarding Company to carry 1,500 tons of dyes and chemicals within a period of 8 months at $1.75 per 100 pounds, no steamers being named. This was the contract of the Forwarding Company and not of the owners of the steamer Owego.

Some time in January, 1917, the Federal Steamship Corporation notified the libelants to have a shipment ready for delivery to steamer Owego between January 23d and 27th, and the libelants did deliver goods and received a receipt for them of the Federal Line, signed by the Federal Steamship Corporation. January 31, 1917, the Federal Steamship Corporation tendered bills of lading for the shipment at the rate of $3 per 100 pounds, instead of $1.75 per 100 pounds, as previously agreed upon with the Federal Forwarding Company. Their goods being stowed aboard the steamer, the libelants paid this freight under protest.

The claimant offered forms of bills of lading in evidence, which did not show by whom they were signed. They conclude with an attesting clause as follows:

"In witness whereof, the master or agent of the steamer hath affirmed to three bills of lading all of this tenor and date; one of which being accomplished, the others to stand void.

"Dated the 29th day of January, 1917."

Assuming that the bills of lading were signed by the master or the agent of the steamer, they bound the steamer. The decree of the court below necessarily implies that the libelants made the freight engagement relied upon and paid the excess freight demanded under protest.

The freight engagement was made November 2, 1916, when the relations between the Forwarding Company and the owners were governed by the charter party of October 4, 1916. The only explanation offered of the appearance of the Federal Steamship Corporation is by reference to a charter party said to have been made by the Forwarding Company as agent of the owners to the Steamship Corporation dated

December 1, 1916. That charter is not shown to have been executed, and is by its terms not to go into effect until the termination of the charter of October 4, 1916, which had at all the times herein mentioned a year to run. Therefore it does not explain. At all events, whether tendered by the Forwarding Company or by the Steamship Corporation, the bills of lading in question, signed by the master or agent of the steamer, bound the steamer.

Without going further into the established maxim that the ship is bound to the cargo and the cargo to the ship, we may certainly say that after the goods have gone aboard it gives each a lien upon the other to secure performance of the contract of transportation, viz. the ship to carry on the terms and at the rate of freight agreed on and the shipper to pay freight at the rate agreed upon. Vandewater v. Mills, 19 How. 88, 15 L. Ed. 554. But the contract of November 2, 1916, was not the contract of the shipowner, and the only contract which binds ship and owners is the bill of lading. For any breach of the engagement of November 2, 1916, the libelants must look to the Federal Forwarding Company, the party making it.

The decree is reversed.