## UNITED STATES *v.* SISCHO.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

No. 76. Reargued April 23, 1923.—Decided May 7, 1923.

1. The purpose of requiring a ship's manifest is not merely the collection of duties but also to inform the Government whether forbidden things are being imported. P. 167.

2. Rev. Stats. § 2766, providing that "the word ' merchandise,' as used in this Title, may include goods, wares, and chattels of every description capable of being imported," does not mean such only as are capable of being legally imported, or make that restriction upon the term as used in prior statutes. P. 168.

3. The Act of January 17, 1914, which forbids the importation of smoking opium, and provides that wherever there shall be found on an incoming vessel opium, or its preparations or derivatives, not shown upon her manifest as provided by Rev. Stats. §§ 2806 and 2807, the vessel shall be liable to the penalty and forfeiture prescribed by § 2809, intends that smoking opium must be included in the manifest, and shows that, from the date of the act at least, the definition of merchandise in Rev. Stats. § 2766, *supra,* must be taken as including forbidden opium. *Id.*

4. Rev. Stats., § 2809, providing that if any merchandise shall be brought into the United States in any vessel from a foreign port, which is not included or described in the manifest, the master shall be liable to a penalty equal to the value of such merchandise, applies to smoking opium, the importation of which has been forbidden. *Id.*

5. The foreign value of such opium was properly taken for the purpose of measuring the penalty in this case. P. 169.

270 Fed. 958, reversed.

CERTIORARI to a judgment of the Circuit Court of Appeals which affirmed a judgment of the District Court for the appellee in an action by the United States to recover a penalty.[1]

---

[1] The case was first argued on October 10, 11, 1922, and, on October 16, 1922, the judgment was affirmed with costs by an equally divided court. 260 U. S. 697. On November 13, 1922, a petition for rehearing was granted and the cause restored to the docket for hearing before a full bench. 260 U. S. 701.

*Mr. Alfred A. Wheat,* Special Assistant to the Attorney General, with whom *Mr. Solicitor General Beck* was on the brief, for the United States.

*Mr. John M. Woolsey,* with whom *Mr. Cletus Keating* and *Mr. Harry D. Thirkield* were on the brief, for respondent.

MR. JUSTICE HOLMES delivered the opinion of the Court.

This is a suit brought by the United States to recover a penalty of $6,400 from the defendant for bringing into this country one hundred five-tael tins of opium prepared for smoking purposes without including the same in the ship's manifest. The defendant was master of the vessel in which the opium was imported and was charged by the Collector of Customs with a liability for the above sum, that being the price paid by the defendant for the goods. By Rev. Stats. § 2809, " If any merchandise is brought into the United States in any vessel whatever from any foreign port . . . which shall not be included or described in the manifest . . . the master shall be liable to a penalty equal to the value of such merchandise not included in such manifest; and all such merchandise not included in the manifest belonging or consigned to the master, mate, officers, or crew of such vessel, shall be forfeited." The District Court, sitting without a jury, held that opium prepared for smoking purposes was not merchandise within the meaning of § 2809, and that being outlawed by the statutes it had no value; and gave judgment for the defendant. 262 Fed. 1001. The judgment was affirmed by the Circuit Court of Appeals, one Judge dissenting, on the former ground. 270 Fed. 958. A writ of certiorari was granted by this Court. 256 U. S. 688. It was stated below that the defendant had been convicted of smuggling; but the

record does not disclose the fact, if material, and nothing turns upon it. The points mentioned are the only ones to be discussed.

The collection of duties is not the only purpose of a manifest, as is shown by the requirement of one for outward bound cargoes and from vessels in the coasting trade bound for a port in another collection district, Rev. Stats. §§ 4197, 3116, and more clearly by the plain reason of the thing. A Government wants to know, without being put to a search, what articles are brought into the country, and to make up its own mind not only what duties it will demand but whether it will allow the goods to enter at all. It would seem strange if it should except from the manifest demanded those things about which it has the greatest need to be informed—if in that one case it should take the chance of being able to find what it forbids to come in, without requiring the master to tell what he knows. It would seem doubly strange when at the same time it required any other person who had knowledge that the forbidden article was on the vessel to report the fact to the master. Act of January 17, 1914, c. 9, § 4, 38 Stat. 275, 276. It is not an answer to say that if the master knows that he has contraband goods on board he is subject to a penalty for that and probably will lie. The law naturally, one would think, would put the screws on to make him tell the truth, and in that way diminish the chance of his carrying contraband and help him to show his innocence if he has made a mistake. *Harford* v. *United States*, 8 Cranch, 109. We are of opinion that this policy, which has been expressed in terms in later statutes, (Act of May 26, 1922, c. 202, § 3, 42 Stat. 596, 598; Tariff Act of September 21, 1922, c. 356, §§ 401(c), 431, 584, 42 Stat. 858, 948, 950, 980;) governs also in the statutes to be construed here. There is less contradiction between the requirement of the manifest and the prohibition of the import than there is between such a

prohibition and a tax. *United States* v. *Stafoff*, 260 U. S. 477.

The main foundation of the decision below is Rev. Stats. § 2766: "The word 'merchandise,' as used in this Title [the Title including § 2809 upon which this suit is based,] may include goods, wares, and chattels of every description capable of being imported." It is argued that this is a definition; that "capable of being imported" must be taken to mean capable of being imported lawfully as otherwise the phrase hardly would do more than exclude chattels real, and would want the poignant significance attributed to every word of legislation; and that therefore the merchandise to be included in the manifest does not embrace opium for smoking which the law has done all it can to exclude. Act of January 17, 1914, c. 9, 38 Stat. 275. Yet this very Act of 1914 provides that whenever there shall be found upon a vessel arriving at any port of the United States opium "or any preparations or derivatives thereof" "which is not shown upon the vessel's manifest, as is provided by sections twenty-eight hundred and six and twenty-eight hundred and seven of the Revised Statutes, such vessel shall be liable for the penalty and forfeiture prescribed in section twenty-eight hundred and nine of the Revised Statutes." We see no adequate reason for not taking these words in their natural sense as including smoking opium and as meaning that it must be included in the manifest, or for limiting them to forfeiture of the vessel. We rather should read them as showing that, at least for the future and at least so far as derivatives from opium are concerned, the language quoted from Rev. Stats. § 2766, was also to be taken in its natural sense as meaning physically capable of being imported.

The language under consideration was an insertion in the Revised Statutes. That volume was primarily a codification of the general statutes then in force and is

not lightly to be read as making a change, although of course it may do so. The words on their face indicate rather an extension than a restriction. " May include " seems to point to the removal of a doubt as to whether previously " merchandise " might include all that is mentioned. It is a most unnatural way of saying that henceforth it shall not include something that otherwise might have been included. To give it the latter meaning we have again to read " capable of being imported " in an artificial sense instead of taking the phrase simply for what it says to a plain mind. The only objection to reading it in the natural way is that it is thought to add nothing to what was contained in " goods, wares, and chattels of every description." But there is no canon against making explicit what is implied and adding a little emphasis to the endeavors to make the proposition broad. The doubts that have been felt show that the endeavor was not very successful, but we believe that it was made. There can be little doubt that before the insertion of § 2766 goods that could not be imported lawfully were merchandise within the meaning of the statutes. It was held in *Harford* v. *United States,* 8 Cranch, 109, that the unlading of such goods without a permit was an offence subjecting them to forfeiture, upon reasoning that applies to the requirement that they should be entered on the manifest, with equal force.

What we have said sufficiently disposes of the suggestion that the requirement was repealed by the opium act that we have cited. That is merely saying in another way that a manifest is not necessary for goods forbidden to enter the country. All that remains is the suggestion that smoking opium has no value. But assuming it to be established that the statutes require the manifest to disclose prohibited articles the penalty imposed implies that such articles may have value and does not require the Courts to set up a technical rule in face of the plain truth.

So the provision that smoking opium shall be forfeited implies that however evil it may be it has an owner. Act of January 17, 1914, c. 9, § 4, 38 Stat. 275. Act of May 26, 1922, c. 202, § 3, 42 Stat. 596, 598. In the circumstances we see no objection to taking the foreign value as evidence, in accordance with the rulings of the Treasury Department. Treas. Dec. No. 32083, December, 1911. 21 T. D. 687.

*Judgment reversed.*