## THE SQUANTO.

## UNITED STATES v. 3,599 BAGS OF LIQUOR, etc.

(Circuit Court of Appeals, Second Circuit. July 12, 1926.)

Nos. 347, 348.

**1. Customs duties ⬤➡130.**

Cargo of liquor *held* subject to forfeiture, under Tariff Act 1922, §§ 401, 593b (Comp. St. Ann. Supp. 1923, §§ 5841d, 5841h13), as unlawfully imported.

**2. Customs duties ⬤➡31.**

Tariff Act 1922 (42 Stat. 858) taxes the importation of intoxicating liquors, as well as imposing penalties therefor.

**3. Customs duties ⬤➡15.**

Importation of merchandise is complete, as regards payment of duty, when goods enter port.

**4. Customs duties ⬤➡129.**

Evidence *held* to show an unlawful unlading of liquor by vessel not in distress, rendering it liable for penalty, under Tariff Act 1922, §§ 586, 594 (Comp. St. Ann. Supp. 1923, §§ 5841h5, 5841h14), *though not liable to forfeiture.*

**5. Customs duties ⬤➡133.**

Under Tariff Act 1922, § 615 (Comp. St. Ann. Supp. 1923, § 5841h35), burden is on claimant to establish innocence of vessel charged with unlawful unlading of merchandise.

**6. Customs duties ⬤➡129.**

Absence of manifest covering cargo of liquor unlawfully imported *held* to render vessel liable for penalty, under Tariff Act 1922, §§ 431, 584 (Comp. St. Ann. Supp. 1923, §§ 5841e, 5841h3).

**7. Internal revenue ⬤➡46—Forfeiture provision of statute held not authority for forfeiture of vessel used in unlawful importation of liquor (Rev. St. §§ 3448, 3450; Comp. St. §§ 6350, 6352).**

Rev. St. § 3450 (Comp. St. § 6352), providing forfeiture for removal or concealment of goods with intent to defraud United States of taxes thereon, applies only to goods produced within exterior boundaries of United States, and is not authority for forfeiture of vessel used in unlawful importation of liquor, in view of section 3448 (Comp. St. § 6350).

**8. Shipping ⬤➡16—Vessel not clearing for port of United States held not subject to forfeiture for violation of statute requiring bill of health (Act Feb. 15, 1893, § 2 [Comp. St. § 9157]).**

Vessel not clearing for port of United States *held* not subject to forfeiture for failure to obtain bill of health, required by Act Feb. 15, 1893, § 2 (Comp. St. § 9157), though its clearance for port without United States was mere pretense.

**9. Intoxicating liquors ⬤➡247.**

Vessel used in unlawful importation of intoxicating liquor *held* not subject to forfeiture, under National Prohibition Act, tit. 2, § 26 (Comp. St. Ann. Supp. 1923, § 10138½mm), in absence of conviction of person from whom seized.

Hand, Circuit Judge, dissenting.

Appeals from the District Court of the United States for the Southern District of New York.

Libels by the United States against the schooner Squanto and against 3,599 bags of liquor, etc., ex schooner Squanto; the Colonial Transportation Company, claimant. From decrees of forfeiture in each case, claimant appeals. Affirmed as to cargo, and reversed as to schooner.

Louis Halle, of New York City (Nathan April, of New York City, of counsel), for appellant.

Emory R. Buckner, U. S. Atty., of New York City (Herman T. Stichman and James A. Farmer, Asst. U. S. Attys., both of New York City, of counsel), for the United States.

Before HOUGH, MANTON, and HAND, Circuit Judges.

MANTON, Circuit Judge. The issues presented by the pleadings were tried together and will be considered in one opinion.

The schooner Squanto was seized by the collector of customs on December 19, 1925, in the evening, at about 7:35, between Norton's Point and Craven Shoals, in New York Harbor. It was proceeding without navigation lights toward Staten Island and was not mak-

ing her way toward Quarantine Station, as is required of vessels arriving from a foreign voyage. There were 12 persons aboard, 11 of whom constituted the crew. The other claimed to have been picked up for the purpose of piloting the Squanto into port. He says he was on a motorboat and had been fishing outside the harbor. At the same time a tugboat which was escorting the Squanto up the bay took flight at the approach of the customs vessel and succeeded in escaping.

After boarding the vessel, the customs officers demanded the ship's papers, which were given, and represented clearance papers from Nassau, a crew list, a bill of health from the Nassau authorities, and a mortgage certificate against the vessel. There was no manifest, but the clearance papers listed the amount of the cargo. Concededly, section 431 of the Tariff Act of 1922 (Comp. St. Ann. Supp. 1923, § 5841e), prescribing the form of manifest required of vessels arriving in the United States, in order to make entry, had not been complied with. The hatches were sealed and the cargo was presumably intact. It was claimed by the captain that the vessel was in distress and that her true destination was St. Pierre Miquelon. The District Judge, on hearing the proof, held that the vessel was not in distress.

The vessel was seaworthy in every respect and was capable of proceeding on this voyage if she so desired. When seized, her engines were going and there were 200 gallons of oil on board. No distress flag had been raised. The crew had no immediate need of food, for there was on board bread, pork, cans of milk and peas, as well as corned beef in sufficient quantities to last out the voyage. She also had good drinking water on board. The clearance papers and the captain's statement showed that he had 4,015 packages of whisky, six bottles to the package, and 190 cases of assorted liquors on leaving Nassau on November 28, 1922. While the seals on the cargo hatches were still intact when the ship was boarded, a doorway leading to the hold was found alongside the galley. The entrance to this was protected by two five-inch spikes, which held the door in place, and it was apparent, from the appearance of the holes which were left at this barrier, that this door had been frequently used. The cargo was packed so as to facilitate the unloading through this door, and was not then intact, as stated by the captain. Several of the packages were broken, and empty boxes were found in the hold. When the cargo was unloaded at the customs house, 3,599 packages,

of 6 bottles each, and 188 cases of liquor were found. There was a discrepancy of 451 packages of 6 bottles each and 2 cases of liquor. It is argued that the missing packages must have been removed after the vessel left the high seas, for their removal left the hold loaded in such a way that it would have been impossible to proceed upon the open seas as the cargo was then packed without seriously damaging the remaining cargo. The inference is that the missing packages were transferred to some smaller craft while hovering about the port. No defense was offered to the testimony produced by the government, and the District Judge, at the conclusion of the trial, ordered the ship and cargo as forfeiture to the government.

[1] The circumstances as related above plainly inform us that this schooner did not enter the port in distress, as stated, but that she was a rum runner, engaged in attempting to sell her cargo unlawfully. The vessel was seaworthy, and the supply on board was sufficient to carry out her voyage according to the captain. Perhaps there was not sufficient food for the round trip to and from St. Pierre Miquelon, but there was no immediate need of assistance at the time entry was made at the harbor. Coming in as she did, without lights and assisted by a pilot, picked up after having been at sea 22 days, when she might have made the voyage in 8 or 9 days, it is sufficient to conclude that the enterprise was intended to surreptitiously dispose of the cargo, in violation of the municipal law of the United States.

The libel asserts three causes of forfeiture of the cargo, based upon violations of section 593 of the Tariff Act of 1922 (Comp. St. Ann. Supp. 1923, §§ 5841h12, 5841h13). The first is that the vessel and crew fraudulently and knowingly imported and brought into the United States intoxicating liquors; second, the concealment of the cargo after importation; and, third, unlawful transportation after importation. It is provided by section 593(b) that—

"If any person fraudulently or knowingly imports or brings into the United States, or assists in so doing, any merchandise, contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise after importation, knowing the same to have been imported or brought into the United States contrary to law, such merchandise shall be forfeited and the offender shall be fined in any sum not exceeding $5,000 nor less than $50, or be imprisoned for any time not

exceeding two years, or both. Whenever, on trial for a violation of this section, the defendant is shown to have or to have had possession of such goods, such possession shall be deemed evidence sufficient to authorize conviction, unless the defendant shall explain the possession to the satisfaction of the jury."

[2, 3] Tariff Act, § 401 (Comp. St. Ann. Supp. 1923, § 5841d), defines "merchandise" as goods, wares, and chattels of every description, and would include merchandise the importation of which is prohibited. United States v. Yuginovich, 256 U. S. 450, 41 S. Ct. 551, 65 L. Ed. 1043; United States v. Staffoff, 260 U. S. 477, 43 S. Ct. 197, 67 L. Ed. 358. The Tariff Act of 1922 (42 Stat. 858) taxes the importation of intoxicating liquors, as well as imposes penalties for its importation. United States v. Sischo, 262 U. S. 165, 43 S. Ct. 511, 67 L. Ed. 925; United States v. Two Automobiles and Five Cases of Whisky (D. C.) 2 F.(2d) 264; Powers v. United States (C. C. A.) 294 F. 512. Section 593b above refers to merchandise imported contrary to law. United States v. One Blue Taffeta Evening Coat (D. C.) 237 F. 703; Goldberg v. United States (C. C. A.) 277 F. 211. And importation is complete, as regards a payment of duty, when the goods enter the port. Arnold v. United States, 9 Cranch, 104, 3 L. Ed. 671; United States v. 36 Cases of Intoxicating Liquor (D. C.) 281 F. 243. The cargo is also subject to forfeiture for transportation and concealment after importation, and this libel may be sustained for possession of liquors illegally possessed. Avignone v. United States (C. C. A. 2d Circuit) 12 F.(2d) 509, decided May 10, 1926. It is clear, therefore, that the cargo was properly seized as forfeiture to the government, and the decree appealed from, which orders such forfeiture to the appellee, is affirmed.

[4] There are 10 causes of forfeiture alleged to support the libel against the vessel. The first cause charges a violation of sections 586 and 594 of the Tariff Act of 1922 (Comp. St. Ann. Supp. 1923, §§ 5841h5, 5841h14). They provide:

"Unlawful Unlading—Exception.—The master of any vessel from a foreign port or place who allows any merchandise (including sea stores) to be unladen from such vessel at any time after its arrival within four leagues of the coast of the United States and before such vessel has come to the proper place for the discharge of such merchandise, and before he has received a permit to unlade, shall

be liable to a penalty equal to twice the value of the merchandise but not less than $1,000, and such vessel and the merchandise shall be subject to seizure and forfeiture: Provided, that whenever any part of the cargo or stores of a vessel has been unladen or transshipped because of accident, stress of weather, or other necessity, the master of such vessel shall, as soon as possible thereafter, notify the collector of the district within which such unlading or transshipment has occurred, or the collector within the district at which such vessel shall first arrive thereafter, and shall furnish proof that such unlading or transshipment was made necessary by accident, stress of weather, or other unavoidable cause, and if the collector is satisfied that the unlading or transshipment was in fact due to accident, stress of weather, or other necessity the penalties above described shall not be incurred."

"Seizure of Vessels and Vehicles.—Whenever a vessel or vehicle, or the owner or master, conductor, driver, or other person in charge thereof, has become subject to a penalty for violation of the Customs-Revenue Laws of the United States, such vessel or vehicle shall be held for the payment of such penalty and may be seized and proceeded against summarily by libel to recover the same," etc.

Determining, as we do, that the vessel was not in distress, and that there was no occasion to unladen or transship her cargo, due to accident, stress of weather, or other necessity, if the vessel unladened part of her cargo within four leagues of the coast of the United States before she had come to the proper place for the discharge of such cargo, she violated section 586 of the Tariff Act, and is subject to a penalty of at least $1,000. The customs officers who boarded the Squanto found the hatches sealed. A careful examination made then revealed that there was a secret and unsealed door leading from the galley to the hold, from which the cargo could be unloaded. When requested to provide the keys for the padlock of this door, the captain did so and the lock was released. The door did not open, and it was observed that there were two five-inch spikes holding it. On pulling the spikes out, an examination showed that they had been placed in drilled holes, from which they had frequently been extracted. It is inferred that this door to the hold had been used for the purpose of removing portions of the cargo without molesting the seals on the hatches. The clearance papers show a cargo of 4,050 packages of whisky, with 190 cases of assorted liquors. At the time of the sei-

zure, there were 3,599 packages and 188 cases of liquor. The captain stated that the liquor had been packed firmly against this door and it is evident that this was the place where the missing liquors were originally stored. The officers who entered the hold found no liquor packed within 6 feet of this entrance, but there was a cleared space, with broken packages of liquor and empty boxes. There is testimony of an experienced stevedore that the removal of these packages and cases left the remaining cargo loaded in such a manner as to make it impossible to proceed in open sea without damage to the remaining cargo.

[5] The fair conclusion from all this is that some had been unloaded shortly before the time the vessel was seized. The Squanto was in contact with a motorboat, from which the drafted pilot came, and was escorted into the harbor by a tugboat, which made its escape when the government vessel approached. How much was unloaded cannot be established, except as may be judged from the discrepancy in the count of the cases. These circumstances establish the probable cause for instituting the proceeding looking toward enforcement of the penalty as against the vessel, and we think, under section 615 of the Tariff Act of 1922 (Comp. St. Ann. Supp. 1923, § 5841h35), that the burden of proof is upon the claimant to establish the innocence of the vessel. Locke v. United States, 11 U. S. (7 Cranch) 339, 3 L. Ed. 364; The Thompson, 70 U. S. (3 Wall.) 155, 18 L. Ed. 55. The conduct of the stranger to the vessel, the drafted pilot, when questioned, casts suspicion upon his alleged occupation at the time he was called upon to pilot the Squanto into port. There is sufficient in this statement of proof to fairly conclude that there was an unloading in violation of the law within the four leagues, and, in the absence of the claimant proving the innocence of the vessel, it cannot escape. Coquitlam v. United States, 163 U. S. 346, 16 S. Ct. 1117, 41 L. Ed. 184; Feathers of Wild Birds v. United States (C. C. A.) 267 F. 964.

[6] The ninth and tenth causes of forfeiture may be treated together, and are based upon the lack of a manifest. Section 584 of the Tariff Act (Comp. St. Ann. Supp. 1923, § 5841h3) provides that the master of the vessel or any person in charge, bound for the United States, who does not produce a manifest to the officer demanding the same, is liable to a penalty of $500 and if any merchandise, including sea stores, is found on board which is not included or described in the manifest or does not agree therewith, the master of such vessel or person in charge is liable to a penalty equal to the value of the merchandise as found or unladen. As pointed out in United States v. Sischo, 262 U. S. 165, 43 S. Ct. 511, 67 L. Ed. 925, intoxicating liquors designated for beverage purposes, and therefore incapable of lawful importation, must nevertheless be manifested, as if it were lawful merchandise. The failure to have this cargo manifested was a violation of section 584, and penalizes the master in the first instance in the sum of $500 for his refusal to present a manifest, and the vessel is subject to this penalty (section 584). The purpose of the manifest is to prevent the importation of forbidden merchandise. It is required by section 431 of the Tariff Act of 1922, and must be prepared before importation. United States v. Bengochea (C. C. A.) 279 F. 537.

[7] The third cause of forfeiture cannot be sustained. It is based upon section 3450 of the Revised Statutes (Comp. St. § 6352), providing for forfeiture of any goods or commodities in respect whereof a tax is or shall be imposed, which is removed or concealed with intent to defraud the United States. The theory of the government is that the cases of intoxicating liquors were removed with intent to defraud the United States of the tax. The scope and reach of this section has no application to goods brought in from foreign ports, and we think refers only to articles produced within the exterior boundaries of the United States. The liquor on the Squanto was not produced in the United States but concededly without. Indeed, it was charged that it was imported into the United States. Its presence on board the Squanto could not form a basis of forfeiture for the alleged violation of this section. See section 3448 of the Revised Statutes (Comp. St. § 6350).

[8] The fourth ground of forfeiture charges a violation of Act Feb. 15, 1893, c. 114, § 2 (Comp. St. § 9157), providing:

"That any vessel at any foreign port clearing for any port or place in the United States shall be required to obtain from the consul, vice consul, or other consular offices of the United States at the port of departure, or from the medical officer," etc., "a bill of health, in duplicate, in the form prescribed by the Secretary of the Treasury, setting forth the sanitary * * * condition of said vessel," etc.

But the Squanto did not clear for a port of the United States, whether or not its clearance for St. Pierre was a pretense.

The fifth and sixth causes of forfeiture have been abandoned by the government.

[9] The seventh and eighth causes of forfeiture are based upon title 2, § 26, of the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138½mm). By the terms of that section, there must be a conviction of the person arrested before there may be a sale of the property seized. United States v. One Packard Motor Truck (D. C.) 284 F. 394; United States v. Sagatind (C. C. A. 2d Circuit) 11 F.(2d) 673, decided April 5, 1926.

The decree ordering forfeiture of the vessel may not be sustained, but the vessel will be held liable for the respective penalties of $1,000 and $500.

Decree as to cargo affirmed, and decree as to the vessel reversed, with costs.

HAND, Circuit Judge (dissenting). I agree that the cargo should be forfeited, and that the ninth and tenth causes of forfeiture are made out against the Squanto, resulting in a fine of $500. I dissent as to the first cause of forfeiture under section 586 of the Tariff Act of 1922 (Comp. St. Ann. Supp. 1923, § 5841h5). It does not seem to me that the proof warranted the conclusion that the missing liquor was unladen within four leagues of the coast. It is quite true that it may have been put off on the tug which escaped, or on the launch from which the supposed pilot was taken on; but either conclusion, it seems to me, is a mere guess. Section 615 (Comp. St. Ann. Supp. 1923, § 5841h35), assuming this to be a case "relating to the collection of duties," does not supply any defect of proof, as would a presumption; all it does is to put the burden of proof on the claimant, which is quite another matter.