## THE PESCAWHA.

### No. A-9820.

District Court, D. Oregon.

June 4, 1928.

J. O. Stearns, Jr., Asst. U. S. Atty., of Portland, Or., for libelant.

James B. O'Connor and Harold C. Faulkner, both of San Francisco, Cal., and E. M. Morton, of Portland, Or., for respondent.

BEAN, District Judge.

This is a libel filed by the United States against the steamer Pescawha and her cargo for a violation of the tariff and prohibition laws.

The facts are practically undisputed. The Pescawha is a Canadian owned and registered gasoline schooner of about a hundred gross tonnage. On November 8, 1924, she cleared from the port of Vancouver, B. C., with a cargo of liquor destined ostensibly for a Canadian port, but in fact she came south and hovered off the Oregon and Washington coasts with the intention of delivering her cargo to boats from the shore. On the 28th of the month she made contact off the Oregon coast with the gasoline schooner Azalia, having a speed of about twenty miles an hour, to which she delivered part of her cargo, which was taken into the Columbia river. The captain and crew of the Pescawha and other parties interested with them were indicted, tried, and convicted in this court for conspiracy to violate the laws of this country, and have served, or are now serving, their sentences.

About 4 o'clock, on the afternoon of February 3, 1925, the Coast Guard steamer Algonquin, while cruising off Grays Harbor entrance, searching for the crew of the foundered Caoba, which had taken to the lifeboats, sighted off her starboard bow a schooner (which proved to be the Pescawha), 6.6 miles from the Washington shore, which was headed apparently in a due westerly course, with her sails set. The master of the Algonquin, considering her actions suspicious, concluded to intercept her to determine her identity, purpose, destination, and whether she had aboard the Caoba crew. After pursuing her for about ten miles, the Algonquin overhauled her, when it was ascertained that she had the name "Pescawha, Vancouver, B. C.," on her stern, but was flying no flag.

She had the crew of the Caoba aboard, and was towing its boat astern.

The Pescawha was boarded by an officer of the Coast Guard, and, it being ascertained that she had aboard a large quantity of intoxicating liquor and no manifest, she was seized, taken into the port of Astoria, where she was delivered to the collector, and the vessel appraised at $30,000 and the cargo at $63,180.

In the answer of the claimant, it is denied that at the time of the seizure the Pescawha was bound for the United States or hovering off the coast with the purpose or intent of clandestinely smuggling into this country intoxicating liquors, or that she was attempting to import, or had imported, any such liquors, but that at the time of the seizure she was in excess of twenty miles from the main land, and was cruising in search of a reported missing lifeboat of the Caoba, and to hail a vessel for the purpose of putting the members of the crew on board of her. There was, however, no evidence given or offered in support of these allegations.

The question for decision, therefore, is whether a foreign vessel engaged in smuggling, or attempting to smuggle, into the United States intoxicating liquors, in violation of our laws, if discovered within twelve miles of the coast by a Coast Guard, may be pursued and seized beyond the twelve-mile limit, and the vessel and her cargo forfeited.

This question in its various forms is so fully and carefully considered in The Vinces (D. C.) 20 F.(2d) 164; Arch v. United States (C. C. A.) 13 F.(2d) 382; The Norman Bridge (C. C. A.) 13 F.(2d) 435; The Squanto (C. C. A.) 13 F.(2d) 548; The Panama (D. C.) 6 F.(2d) 326; U. S. v. Bengochea (C. C. A.) 279 F. 537; and The Mistinguette (D. C.) 14 F.(2d) 753, that further deliberation is unnecessary.

In Arch v. U. S., supra, the Court of Appeals of the Fifth Circuit, after alluding to the fact that from the earliest times the United States has claimed and exercised jurisdiction over the marginal sea to at least four leagues from shore for the purpose of enforcing her revenue and custom laws, holds that, when a vessel loaded with a cargo of intoxicating liquor intended to be introduced into the United States, either by making contact with small boats, or by entering the harbors, reaches a point within four leagues from the shore, she is as much within the jurisdiction of the United States as if actually in port and alongside a wharf, and is required to observe all the customs laws and regulations, and a Coast Guard vessel has authority to board her for the purpose of making an examination of her cargo, and, if she has no manifest, the right to search and seize the vessel without the necessity of securing a warrant.

In the United States v. Bengochea, supra, it was held by the Court of Appeals of the Fifth Circuit that intoxicating liquor is merchandise within the law requiring the master of a vessel bound for the United States with such a cargo to have a manifest thereof, and that such a vessel, intending to get its cargo into the United States by delivering it at sea within twelve miles from the shore to a boat by which it shall be carried to a port of the United States, "was bound to the United States" within the meaning of the revenue law requiring the master to deliver upon demand a manifest to the custom or Coast Guard officers, and providing a penalty for failing to do so.

To the same effect is The Mistinguette, supra. In Vinces, supra, it was held that, where a liquor loaded vessel is discovered by a Coast Guard vessel within the twelve-mile limit, and attempts to escape by proceeding to sea, she may be pursued and seized beyond the twelve-mile limit, and such seizure is not unlawful or in violation of the Treaty with Great Britain. 43 Stat. 1761.

█ I conclude, therefore, that the seizure in this was lawful.

██ There was admitted in evidence during the trial over claimant's objection, and subject to its motion to strike out, the logbooks of the Algonquin, and a chart upon which the officers of that vessel had delineated the location and course of the two vessels. The general rule is that the entries in the log of a vessel are not admissible on behalf of the vessel or the party keeping it. Worrall v. Davis (D. C.) 113 F. 549. But whether that rule is applicable to the instant case is immaterial, for neither the logbook nor the chart added anything to the independent testimony of the officers of the Algonquin, but was merely corroborative thereof.

█ It is urged that, because the officers of the Coast Guard vessel had no knowledge prior to the seizure that the Pescawha was a rum runner, the seizure was unlawful. Section 581 of the Tariff Act of 1922 (19 USCA § 481) authorizes officers of the Coast Guard to at any time go aboard any vessel within four leagues of the coast to examine the manifest and inspect the same, and to that end to

hail and stop such vessel, if under way, and, in case of escape or an attempt to escape, to pursue the same. It is a fair inference from the testimony that the Pescawha, when she recognized the Algonquin, attempted to escape by proceeding to sea, and therefore the Algonquin was justified in pursuing and seizing her, even beyond the twelve-mile limit.

It is also claimed that the Pescawha was not required to have a manifest, but this contention overlooks section 431 of the Tariff Act of 1922 (19 USCA § 241), which provides that every vessel arriving in the United States and required to make entry shall have on board a manifest in a form prescribed by the Secretary of the Treasury, and signed by the master, containing detailed account of the merchandise on board with the marks and numbers of each package, etc., although such merchandise cannot be legally imported into the United States (U. S. v. Sischo, 262 U. S. 165, 43 S. Ct. 511, 67 L. Ed. 925; U. S. v. Bengochea, supra), and sections 583 and 584 (19 USCA §§ 485, 486), which provide that the master of any vessel bound for the United States shall deliver to the officer of the customs or Coast Guard, who shall first demand it of him, the original and one copy of the manifest, and, if he fails to do so, shall be liable to a penalty of $500 and the value of the goods not entered or described in the manifest, for the payment of which the vessel may be seized and proceeded against (section 594 [19 USCA § 498]).

It is argued that the evidence does not show that the manifest was demanded of the captain of the Pescawha. The testimony is that, when the Pescawha was overhauled, the commander of the Algonquin sent a boarding officer aboard her with instructions to examine the manifest and other papers, and in due time the officer returned and reported that her master had refused to show his papers, but admitted that he had on board a cargo of approximately a thousand cases of intoxicating liquor. The Pescawha was thereupon seized and taken into port, and at no time was any claim made by her master or any other person that she had a manifest of her cargo.

Finally, it is claimed that, because no penalty has been imposed upon the Pescawha or her master for failure to have or exhibit a manifest, this suit cannot be maintained. In all the forfeiture cases to which my attention has been called, except that of the Seijo v. U. S. (C. C. A.) 20 F.(2d) 904, the point has not been made or, if made, considered by the court, but it has been assumed that the imposition of the penalty was not a condition precedent to the bringing of a libel for forfeiture of the vessel. The Seijo was overhauled by a Coast Guard vessel and taken in to the port of San Juan, Porto Rico, where she was seized by the collector, and held to respond for such penalties as might be imposed, upon the vessel or her master, by any decree or order of the court of Porto Rico. The liquor found aboard the vessel belonged to the master and the first mate, and was concealed under the cargo. The master and mate were indicted and tried for attempting to introduce into Porto Rico liquor from a foreign country with intent to defraud the United States of the duty thereon. The master was acquitted, and the verdict against the mate set aside. Thereafter the United States brought suit for the forfeiture of the vessel, and the court held, on appeal, that the suit could not be maintained because no penalty had been imposed upon the vessel, and there had been no adjudication of a violation of customs or revenue laws of the United States by the vessel.

It follows, therefore, that plaintiff is entitled to a decree as prayed for.