**COMPANIA NAVIERA VASCONGADA,** Appellant,

v.

**UNITED STATES of America,** Appellee.

No. 22099.

United States Court of Appeals Fifth Circuit.

Jan. 21, 1966.

John H. Tappan, Pillans, Reams, Tappan, Wood & Roberts, Mobile, Ala., of counsel for appellant.

Vernol M. Jansen, Jr., U. S. Atty., Mobile, Ala., Jerry H. Opack, Atty., Dept. of Justice, Washington, D. C., Herbert J. Miller, Jr., Asst. Atty. Gen., for appellee.

Before MARIS,* RIVES and BELL, Circuit Judges.

MARIS, Circuit Judge:

This appeal presents the question whether a vessel of foreign registry engaged in foreign trade which has previously arrived at the first United States port on its current voyage, is required, upon arrival at succeeding ports in the United States, to list in its manifest ship's stores purchased duty and tax-free by its master at preceding United States ports. The facts out of which the question arises are these:

The Valentina Frias, a ship of Spanish registry, arrived at the port of New York in November 1960 from a foreign port and departed for a foreign port from the port of Mobile, Alabama, during the following month. Upon its arrival at New York all its cargo, stores and supplies were listed on its manifest, which was prepared in accordance with section 431(a) of the Tariff Act of 1930, as amended, 19 U.S.C.A. § 1431(a). At that time a customs officer placed certain of the ship's stores under seal. The vessel subsequently sailed from New York to Newport News, Virginia, then to Mobile, Alabama, and then to Galveston, Texas. Upon entry in each port, the master delivered the ship's manifest to the customs authorities. At these domestic

* Of the Third Circuit, sitting by designation.

ports the master purchased for the ship's stores approximately 240,000 cigarettes and 100 cases of beer. These articles were purchased from United States customs and internal-revenue bonded warehouses exempt from duty and internal-revenue taxes pursuant to the provisions of section 309 of the Tariff Act, 19 U.S. C.A. § 1309, and they were also placed under seal by customs officers. The vessel then returned to Mobile. During this second stop at that port, a customs port investigator apprehended two seamen in possession of nine bottles of spirits. These men, who were from another vessel, informed the customs officer that they had purchased the liquor from the steward of the Valentina Frias. After receiving this information, customs officers inspected the vessel and inventoried the stores on board. This inventory disclosed that approximately 222,000 cigarettes and 87⅝ cases of beer, which had been purchased for ship's stores free of duty and tax from the bonded warehouses, and 19 bottles of wine were on board but were not listed as ship's stores on the manifest which had been furnished to the customs authorities by the vessel's master on its second stop at Mobile. Because of the failure of the manifest to list these ship's stores, the Bureau of Customs administratively determined that section 584 of the Tariff Act of 1930, 19 U.S.C.A. § 1584, had been violated and assessed a penalty in the amount of $2,722.16, the appraised value of the undeclared stores, which was paid by the master under protest.[1] The unlisted articles were seized by the customs officers and this libel for their forfeiture and condemnation was brought by the United States in the District Court for the Southern District of Alabama. In an answer the appellant denied that section 584 of the Act was applicable to the articles purchased dur-

ing the coastwise trip of the vessel and in a cross-libel refund of the penalty was sought. The district court held that the Valentina Frias, as it proceeded from New York to other ports of call in this country, was a vessel "bound to the United States" within the meaning of section 584 of the Act and that its master was required to produce at each succeeding port a manifest accurately listing the ship's stores then on board, including the cigarettes and beer purchased from the bonded warehouses. The district court accordingly entered a decree forfeiting the seized property to the use of the United States and dismissing the cross-libel. United States v. 87⅝ Cases Beer (King), D.C.Ala.1964, 233 F.Supp. 555. This appeal followed.

It will be observed that the stop of the Valentina Frias at Mobile with which we are here concerned was its fourth successive call at a United States port after its arrival from abroad at the port of New York. At this point in its voyage it was engaged in loading cargo for foreign ports. Whether upon making entry at the port of Mobile on this stop its master was required to produce a manifest which specified, inter alia, all the ship's stores then actually on board, including those acquired at previous United States ports, the question presented upon this appeal, is to be determined from the provisions, not wholly harmonious, upon the subject which are contained in the Tariff Act of 1930, 19 U.S.C.A. ch. 4, and the regulations adopted pursuant thereto.

The appellant argues that since section 431(a) of the Tariff Act requires a manifest only in the case of a vessel "arriving in the United States," the manifest to which the statute and regulations refer is solely that which lists the merchandise and stores on board upon its arrival at

---

1. The inventory also disclosed that 356 boxes of spirits which were listed on the manifest when the vessel arrived in New York were not on board and not accounted for by the master. For this shortage, the Bureau of Customs determined that section 584 had been vio-

lated and a $500 penalty was imposed, which was paid by the master under protest. The refund of this $500 fine was also claimed in the cross-libel, but the claim was abandoned in the district court and is not here involved.

the first American port. It is only this manifest, says the appellant, which is referred to by section 584 of the Tariff Act which imposes penalties upon the master or owner of a vessel "bound to the United States" whose manifest does not include or describe all the merchandise and stores on board. Accordingly, runs the appellant's argument, since the master produced at Mobile a manifest which accurately listed the ship's stores which were on board when the vessel arrived at New York, its first American port, Section 584 was not violated even though the manifest did not list the ship's stores then actually on board which had been acquired at American ports. We do not agree.

■■ The appellant asks us to place too narrow a meaning upon the phrase "arriving in the United States" in section 431(a) and the cognate phrase "bound to the United States" in section 584. A vessel is arriving in the United States when it is entering a United States port from the high seas and it is bound to the United States when it is proceeding on the high seas to such a port, even though it may have last cleared from another American port rather than a foreign one. That Congress intended these phrases to have this broad a meaning is indicated by section 433 which refers to the "arrival * * * of a foreign vessel from a domestic port * * * at any port or place within the United States", 19 U.S.C.A. § 1433. It is also demonstrated by the fact that Congress knew how to limit the scope of the phrase when it wished to do so. Thus in section 432 it referred to "any vessel arriving from a foreign port or place" and in section 446 to "Vessels arriving in the United States from foreign ports", 19 U.S.C.A. §§ 1432 and 1446, respectively.

■ Moreover an examination of the law and the regulations as a whole makes clear the Congressional design that every foreign vessel, with exceptions not here material, should be required to have and produce to the customs authorities at each American port at which it calls a manifest listing, inter alia, the merchandise and stores which are on board. Tariff Act of 1930, §§ 435, 439, 443, 444, 583, 19 U.S.C.A. §§ 1435, 1439, 1443, 1444, 1583.

In the case of a vessel arriving from abroad the manifest is described by the regulations as an "inward foreign manifest". 19 CFR § 4.7. If a foreign vessel which has arrived at an American port is to deliver some of its foreign cargo at other American ports a certified copy of the inward foreign manifest, showing the portion of the cargo entered at that port and the portion remaining on board, is returned to the master and is known as the "traveling manifest". 19 CFR § 4.85. When the vessel loads cargo at an American port for export, as the Valentina Frias was doing at Mobile, the manifest which is required to be filed with the customs authorities is described as an "outward foreign manifest", 19 CFR § 4.63, and is required to state all the cargo loaded for export at that port and all previous ports of loading. 19 CFR § 4.87.

The manifest which must be produced at each port is expressly required by statute to include an "account of the sea stores and ship's stores on board of the vessel". Tariff Act of 1930, § 431(a), 19 U.S.C.A. § 1431(a). The manifest is required to be corrected if not accurate. Tariff Act of 1930, § 440, 19 U.S.C.A. § 1440. In the case of a foreign vessel proceeding from port to port in the United States to discharge cargo from a foreign port the master is specifically required by the regulations to list for the customs authorities at each port the stores on board, 19 CFR § 4.85(c), and the same procedure is required by the regulations in the case of a foreign vessel proceeding from port to port in the United States to load cargo for foreign ports. 19 CFR § 4.87(d).

The appellant contends that the function of the ship's manifest, in the case of a foreign vessel, is merely to prevent the importation into the United States of forbidden merchandise and of lawful merchandise without payment of customs duties. This function, it says, was

fully performed by the master of the Valentina Frias in producing the vessel's manifest at the port of New York. But the function of the manifest is much broader than this. "The collection of duties is not the only purpose of a manifest, as is shown by the requirement of one for outward bound cargoes," observed Justice Holmes in United States v. Sischo, 1923, 262 U.S. 165, 167, 43 S.Ct. 511, 512, 67 L.Ed. 925, "A government wants to know, without being put to a search, what articles are brought into the country, and to make up its own mind not only what duties it will demand but whether it will allow the goods to enter at all."

The appellant contends that section 584 of the Tariff Act cannot apply to the Valentina Frias since it could not be regarded as a vessel "bound to the United States" after it had actually arrived in the port of Mobile. We think, however, that it would deprive section 584 of meaning to hold that its provisions with respect to the manifest of a vessel bound to the United States are limited to a vessel which is on the high seas outside the customs waters [2] or a customs collection district or port of the United States. For it is only in the latter areas that the vessel may be boarded by customs officers and the manifest produced to and examined by them. See section 581 of the Tariff Act, 19 U.S.C.A. § 1581, which authorizes customs officers to board vessels in such waters, and section 583, 19 U.S.C.A. § 1583, which requires the master to produce the manifest upon demand of such an officer. Accordingly a vessel which has come from the high seas into the customs waters, into a customs collection district or actually into a port of the United States is a vessel "bound to the United States" with-

in the meaning of section 584. Compare The Metmuzel, 4 Cir. 1931, 49 F.2d 368.

The appellant also argues that section 584 of the Tariff Act, under which this proceeding was brought, is fundamentally a customs measure and, therefore, can have no applicability to the present situation in which ship's stores comprising cigarettes and beer purchased in the United States were omitted from the vessel's manifest. But even if we assume that the sole function of section 584 is to protect the customs revenue it is clear that the situation involved in this case was appropriate for its application. For the ship's stores here involved were purchased tax and duty free from customs and internal-revenue bonded warehouses. This was done under the authority of subsection (a) of section 309 of the Tariff Act of 1930, 19 U.S. C.A. § 1309(a), which authorizes such purchases "for supplies * * * of * * * foreign vessels * * * actually engaged in foreign trade". However, subsection (b) of section 309 provides that such supplies "shall be considered to be exported", and subsection (c) provides that any such supplies "thereafter removed in the United States from any vessel * * * or otherwise returned to the United States, shall be treated as an importation from a foreign country." It will thus be seen that the customs authorities at Mobile had a direct interest in knowing of the presence on shipboard of these stores which, if removed from the vessel, would have been subject to customs duties at that port.

We hold that the Valentina Frias was a vessel bound to the United States within the meaning of section 584 of the Tariff Act of 1930 when it was in the port of Mobile and that the statute was applicable to the manifest which the master

---

**2.** "Customs waters" are defined by section 401(m) of the Tariff Act to mean "in the case of a foreign vessel subject to a treaty or other arrangement between a foreign government and the United States enabling or permitting the authorities of the United States to board, examine, search, seize, or otherwise to enforce upon such vessel upon the high

seas the laws of the United States, the waters within such distance of the coast of the United States as the said authorities are or may be so enabled or permitted by such treaty or arrangement and, in the case of every other vessel, the waters within four leagues of the coast of the United States." 19 U.S.C.A. § 1401(m).

of the Valentina Frias filed with the customs authorities in Mobile. Since the cigarettes and beer which were condemned in this proceeding were not included or described in that manifest they were properly condemned and the cross-libel for the return of the fine of $2,722.16 imposed upon the master was properly dismissed.

The judgment of the district court will be

Affirmed.