[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 31, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-11746
Non-Argument Calendar

_____

D. C. Docket No. 01-03173-CV-KAM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

NANCIA KAFLEUR, et al.,

Defendants,

WASHINGTON INTERNATIONAL INSURANCE CO.,
RIVERSIDE SHIPPING, INC.

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

**(January 31, 2006)**

Before BIRCH, CARNES and PRYOR, Circuit Judges.

PER CURIAM:

Defendants-appellants Riverside Shipping, Inc., ("Riverside") and Washington International Insurance Co. ("WIIC") appeal an order by the district court dismissing their motions for summary judgment and granting summary judgment to the government, which sought to collect on an international carrier bond posted for the entry and unlading of the vessel M/V Great Northeastern Express. Concluding that there were no material issues of fact in dispute, the district court found that, under 19 U.S.C. § 1584, both defendants were liable in the amount of the $100,000 bond. Finding no reversible error, we AFFIRM.

## I.  BACKGROUND

Riverside Shipping is in the business of acting as a ship's agent for vessel owners or charters. A ship's agent presents a vessel's documentation and required government forms to United States Customs and Border Protection ("Customs") for approval and clearance upon arrival and departure of a vessel. In so doing, it is required to post a surety bond with Customs. 19 C.F.R. § 113.64; see also 19 C.F.R. § 4.3(b)(2).

Consistent with that obligation, on 28 January 1988, Riverside and WIIC, as

2

principal and surety, jointly filed a Customs Bond (Customs Form 301), which

became effective 15 February 1988.  The heading of the bond read:

> In order to secure payment of any duty, tax or charge and
> compliance with law or regulation as a result of activity
> covered by any condition referenced below, we, the below
> named principal(s) and surety(ies), bind ourselves to the
> United States in the amount or amounts as set forth below.

R1-48 at Exh. A.  In Section II, the bond listed the activity name and customs

regulation in which the relevant conditions were codified as International Carrier

Bond and Customs Regulation 113.64.  The limit of liability was executed in the

amount of $100,000.  The bond was effective 15 February 1988 and remained in

force "for one year beginning with the effective date and for each succeeding

annual period, or until terminated."  Id.

On 17 July 1996, Riverside filed a Customs Form 3171, i.e., an application

for a permit for unlading, lading, and overtime services with Customs for the entry

of the M/V Great Northeastern Express (hereinafter "Express").  According to the

form, the Express was to arrive in Miami on 18 July 1996 for the purpose of,

among other things, unlading merchandise as shown on the manifest.  The form

named Nancia Kafleur as the owner or operator and referenced Riverside's

continuous international carrier bond.  In a deposition, the president of Riverside

explained that "[t]he purpose of a bond, is essentially, I guess, to protect Customs

3

in the event that a customer of a ship's agent comes in and doesn't pay duties or doesn't follow the procedures established by Customs for a vessel to enter and clear port." R2-90, Deposition at 25.

In the usual situation, Riverside would have notified Customs of the anticipated arrival of the Express, its docking location, and the arrangements to meet a Customs agent on board the Express for submission of clearance forms, crew list, and cargo manifest. Within forty-eight hours, Riverside would then execute formal entry by delivering the signed forms to the Customs Office in Miami and by paying entry fees. However, this was not a usual entry.

Instead, the U.S. Coast Guard intercepted the Express and towed it to the U.S. Coast Guard Station at Miami Beach. At the station, Customs discovered a steel box in the port fuel tank of the Express. The steel box contained 89.9 pounds of cocaine. After securing the cocaine, Customs ordered the persons on board the Express to continue to pilot the ship to its final destination for formal entry. After docking at the point of entry, all persons on board the Express fled. At that time, no manifest was produced.

During the entire day that the ship arrived and the narcotics were allegedly found on board, Riverside repeatedly tried to contact Customs to inquire as to the location of the Express. Customs informed Riverside that it was not allowed to

board the Express, inspect the ship, or present papers at the Coast Guard Station. Riverside did send an agent to report to the intended docking location. However, the master and crew of the Express had fled prior to her arrival. As a consequence, the manifest was not and could not be signed.

On 29 July 1996, Customs issued a notice of statutory penalty to Riverside under 19 U.S.C. § 1584 and assessed a statutory penalty of $1000 per ounce of cocaine, for a total of $1,438,400. On 27 September 1996, Customs issued a similar notice of penalty to the surety, WIIC, for $100,000, the full amount of the bond. On 28 July 1998, Customs agreed to mitigate the penalty against Riverside to $143,840. After its demands for payments were not met, the government filed this lawsuit. On 11 March 2004, the district court entered summary judgment in favor of the government and against Riverside and WIIC.

On appeal, Riverside raises four arguments against the district court's order: First, the penalties under 19 U.S.C. § 1584 are not applicable to a ship's agent and a ship's agent's general customs bond is therefore not subject to forfeiture for the criminal acts of the responsible parties. Second, the government was obliged under § 1584 to demand the production of the Express's manifest when it exercised control over the Express. Third, Riverside was entitled to an evidentiary hearing to determine if those operating the Express knew or should have known that there

5

was cocaine on board. Fourth, Riverside's affirmative defenses raised genuine issues of material fact which precluded entry of summary judgment.

On appeal, WIIC raises two arguments against the district court's order. First, the penalties under § 1584 are inapplicable because the cocaine had been removed by the Coast Guard prior to the time when the manifest was required to be produced. Second, the imposed penalty was excessive and violated the Eighth Amendment. After identifying the appropriate standard of review, we will address Riverside's and WIIC's arguments in turn.

## II. DISCUSSION

A. <u>Standard of Review</u>

"We review a grant of summary judgment <u>de novo</u>, applying the same standard as the district court." <u>Korman v. HBC Fla., Inc.</u>, 182 F.3d 1291, 1293 (11th Cir. 1999). We will affirm the district court if, after construing the evidence in the light most favorable to the nonmoving party, we find that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. <u>C.B. ex rel. Breeding v. Driscoll</u>, 82 F.3d 383, 386 (11th Cir. 1996).

B. Riverside's Arguments

Riverside's first argument, that a ship's agent and its international carrier bond are outside the scope of § 1584, lacks merit. Under 19 U.S.C. § 1431(a), vessels arriving from foreign nations are required to have a manifest . See also 19 C.F.R. § 4.7(a). Under 19 U.S.C. § 1584(a)(1), failure to produce a manifest or the production of a false manifest results in a penalty. Under § 1584(a)(2), if cocaine is found on board, the penalty of $1000 per ounce is assessed. In holding that a surety was liable under an international carrier bond for a penalty imposed by the government against the principal, we concluded that "[c]onsidering the entire regulatory scheme, it is clear that Customs intended the international carrier bond to ensure payment of penalties imposed, among other things, for failure to manifest cargo under § 1584(a)(2)." United States v. Rigel Ships Agencies, Inc., __ F.3d __, No. 04-13065, 2005 WL 3429513, at *4 (11th Cir. Dec. 15, 2005) (per curiam). Thus, having previously concluded that a surety for an international carrier bond is liable for the principal's actions under § 1584(a)(2), it follows that the ship's agent, which contracted with the surety and is listed on the bond, is also liable under § 1584(a)(2).

Riverside's second argument, that the government's demand for a manifest was a prerequisite to the assessment of penalties under 19 U.S.C. § 1584(a)(2), also

7

lacks merit. Section 1584 applies when a manifest either fails to list merchandise found onboard a vessel or when there is no manifest at all. See Gillam v. United States, 27 F.2d 296, 301 (4th Cir. 1928) (holding that penalties for failure to include merchandise on a manifest applies not only when a manifest is produced and merchandise not listed, but also when no manifest is produced at all); see also 19 C.F.R. § 4.7(a). Further, the master of a vessel must possess and be ready to produce a manifest regardless of whether a demand for the manifest is made. See 19 C.F.R. § 4.7(b); see also 19 C.F.R. § 4.1(b)(2) (requiring the master and crew to remain on the vessel until a Customs inspection is made).

Specifically, section 1584(a)(1) provides that:

> Any master of any vessel and any person in charge of any vehicle bound to the United States who does not produce the manifest to the officer (whether of the Customs Service or the Coast Guard) demanding the same shall be liable to a penalty of $1,000, and if any merchandise including sea stores, is found on board of or after having been unladen from such a vessel or vehicle which is not included or described in said manifest or does not agree therewith, the master of such vessel or the person in charge of such vehicle . . . or any person directly or indirectly responsible for any discrepancy between the merchandise and said manifest shall be liable to a penalty equal to the lesser of $10,000 or the domestic value of the merchandise so found or unladen.

Section 1584(a)(2) provides that:

> If any of such merchandise so found consists of . . . cocaine . . . the master of such vessel or person in charge of such vehicle . . . or any

8

person directly or indirectly responsible for . . . cocaine . . . being in such merchandise shall be liable to a penalty of $1,000 for each ounce thereof so found.

Even if the demand language of subsection (a)(1) is applicable to subsection (a)(2), we agree with the district court that common sense and reason dictate that liability for a penalty under § 1584(a)(2) is not conditioned upon the government showing that a demand for a manifest was made when the master responsible for producing the manifest has fled the vessel. See United States v. Sischo, 262 U.S. 165, 167, 43 S. Ct. 511, 512 (1923) ("The collection of duties is not the only purpose of a manifest . . . .  A government wants to know, without being put to a search, what articles are brought into the country, and to make up its own mind not only what duties it will demand but whether it will allow the goods to enter at all.").  Here, the master of the Express fled the vessel before any Customs inspector came onboard.  Customs could not have demanded the manifest from the master because there was no manifest to produce.

Riverside further argues that a Ninth Circuit case is "dispositive" as to whether a demand must be made before liability under § 1584 is imposed.  Toichi Tomikawa v. United States, 81 F.2d 814, 815 (9th Cir. 1936), held that a failure to comply with an unauthorized or unofficial demand did not constitute a violation of the Tariff Act.  We agree with the district court that Tomikawa is inapposite.

9

Beyond the fact that Tomikawa did not involve the interpretation of § 1584(a)(2), Tomikawa addressed an unauthorized or unofficial demand for a manifest to a master who remained onboard the vessel when the government boarded. In contrast, the master in this case fled before the government boarded the Express at the location for formal entry, which rendered any demand by the government for the manifest a nullity. Again, such an evasion should not be grounds to escape liability under § 1584.

Riverside's third argument also fails. Riverside contends that it was entitled to exculpate itself from liability by presenting evidence at an evidentiary hearing to demonstrate that those in charge of the Express did not know and should not have known that cocaine hidden onboard. The district court did not address this argument.

Section 1584(a)(2) provides that "the master or owner of a vessel used by any person as a common carrier in the transaction of business as such common carrier shall not be liable to such penalties . . . if it appears to the satisfaction of the court that neither the master nor any of the officers . . . nor the owner of the vessel knew, and could not, by the exercise of the highest degree of care and diligence, have known, that such narcotic drugs were on board." See also 19 U.S.C. § 1594(b)(1) ("No conveyance used by any person as a common carrier in the

10

transaction of business as a common carrier is subject to seizure and forfeiture under the customs laws . . . unless the owner or operator . . . participated in, or had knowledge of, the violation, or was grossly negligent in preventing or discovering such violation."); United States v. One (1) 1944 Steel Hull Freighter Converted Wartime Landing Craft Util. Vessel (LCU) Shamrock, 697 F.2d 1030, 1031 (11th Cir. 1983) (holding that the district court erred by entering a summary judgment of forfeiture pursuant to, inter alia, 19 U.S.C. § 1594, because the government had failed, as a moving party, to present evidence showing that the vessel was not a common carrier, which would have shifted the burden to the claimant to demonstrate that the status of the vessel was an issue of material fact).

However, in its motion for summary judgment, Riverside never clearly placed at issue the status of the Express as a common carrier. While Riverside referenced the common carrier exoneration standard in its summary judgment motion, it was only in support of its argument that a ship's agent, unlike a common carrier, is not listed as an entity that could be held liable for payment of penalties assessed under 19 U.S.C. § 1584. See R2-79 at ¶ 6 ("The critical applicable significance of this foregoing quote [from § 1584(a)(2)] is that it constitutes forgiving exculpatory language for those responsible persons who are the statutorily enumerated potentially responsible parties for a vessel carrying

11

contraband, and a ship's agent is nowhere to be found amongst those who could be held liable."). While Riverside did cite to two cases that referenced the common carrier exoneration standard, The Mount Clinton, 6 F.2d 418 (2nd Cir. 1925) and Lancashire Shipping Co. v. United States, 4 F. Supp. 544 (S.D.N.Y. 1933), both citations were to the cases as a whole, and Riverside explained that it was "not going to advocate here how these two cases are determinative of the disposition of this case by summary judgment. The court will make that determination on its perusal of these cases." R2-79 at ¶ 8. As such, it is unclear whether Riverside was disputing the common carrier status of the Express, and the district court and the government were therefore not obligated to address an argument that was not clearly presented to them. In re Pan Am. World Airways, Inc., Maternity Leave Practices & Flight Attendant Weight Program Litig., 905 F.2d 1457, 1462 (11th Cir. 1990) ("[I]f a party hopes to preserve a claim, argument, theory, or defense for appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it.").

We will not review Riverside's final argument because it is no longer an issue in this case. Riverside contends that its affirmative defenses raised genuine issues of material fact which precluded entry of summary judgment. While Riverside pled the affirmative defenses of assumption of risk and estoppel in its

12

answer to the government's amended complaint, it did not include these defenses in its motion for summary judgment nor in opposition to the government's motion for summary judgment. As a consequence, the district court did not address the two affirmative defenses in its order. Since these defenses were abandoned by Riverside, we will not address them on appeal. See Road Sprinkler Fitters Local Union No. 669, v. Indep. Sprinkler Corp., 10 F.3d 1563, 1568 (11th Cir. 1994) (The district court "could properly treat as abandoned a claim alleged in the complaint but not even raised as a ground for summary judgment.").

B. WIIC's Arguments

In its brief, WIIC presents two arguments. First, WIIC contends that the failure of the master to produce a manifest to Customs was irrelevant to the assessment of penalties under 19 U.S.C. § 1584 because even if the manifest had been presented to Customs at the time that the Express docked, the cocaine had already been removed by agents and there was therefore no requirement to list it. Second, WIIC argues that the assessment of penalties under § 1584 bears no relation to the gravity of the offense committed by Riverside and is therefore unconstitutional under the Eighth Amendment.

However, neither of these arguments were raised before the district court.

13

We will not, as a general rule, consider an issue that is raised for the first time on appeal. In re Pan Am. World Airways, Inc., 905 F.2d at 1461-62. Because neither of WIIC's arguments fall within the five exceptions to this general rule, we will not consider them. See Baumann v. Savers Fed. Sav. & Loan Ass'n, 934 F.2d 1506, 1512 (11th Cir. 1991).

## III. CONCLUSION

Riverside and WIIC appeal an order by the district court dismissing their motions for summary judgment and granting summary judgment to the government. After a de novo review of Riverside and WIIC's arguments, we conclude that there are no material issues of fact in dispute and that the government is entitled to judgment as a matter of law. **AFFIRMED.**